John H. Galloway, Jr., J.
Defendant moves to suppress as evidence upon the trial of the indictments pending against him the results of a certain test of his blood for its alcoholic content which he claims was taken illegally and without his consent, and of all testimony in connection therewith.
In the late evening of September 3,1962 defendant was operating a motor vehicle on the New York State Thruway in the Town of Greenburgh and became involved in a collision with several other vehicles which resulted in the deaths of two persons. Defendant and several other persons were injured. He was removed, unconscious and in grave condition, from the scene of the accident and taken to a hospital by ambulance. There, within two hours of the accident, and while he was still unconscious and after the “ Last Rites ” of his church had been administered to him, at the request of a New York State trooper a qualified attending physician withdrew a sample of defendant’s blood for chemical analysis to determine its alcohol content. The Distirct Attorney states, without controversion by defendant, that the blood sample was handled and analyzed according to standard police and chemical procedures at the Westchester County Laboratory at Grasslands Hospital, and that the toxicologist’s finding was .11% of alcohol by weight; that before the State trooper requested the blood test, he had reasonable grounds to believe defendant had been operating his motor vehicle while under the influence of alcohol; and that defendant had not been placed under arrest before the blood sample was taken.
Subsequently, on August 1,1963, defendant was charged under two indictments with criminal negligence in the operation of a motor vehicle resulting in the deaths of two persons (Penal Law, § 1053-a). He was arrested and arraigned on the indictments on September 18, 1963, and pleaded not guilty. There being no dispute as to the essential facts underlying this application which are required for its determination, a hearing is *542 unnecessary for a determination of the questions of law presented.
Defendant urges four grounds for suppression: (1) The withdrawal of his blood while he was unconscious and without his consent and the blood test having been performed prior to his arrest, the withdrawal and test were improper under the New York “blood test ” statute (Vehicle and Traffic Law, § 1194, subd. 1) and the results thereof are inadmissible in evidence against him; (2) The aforesaid police action constituted an unreasonable search and seizure in violation of his rights under the Fourth Amendment to the United States Constitution; (3) Such action constituted a violation of his privilege under the Fifth Amendment against self incrimination; and (4) that the police methods adopted in this case also constituted a violation of section 12 of article I of the New York State Constitution which insures defendant against an unreasonable search and seizure of his person or property.
The District Attorney seeks to sustain the blood test by reliance upon the provision of subdivision 1 of section 1194 of the Vehicle and Traffic Law that “ Any person who operates a motor vehicle * * * in this state shall be deemed to have given his consent to a chemical test of his breath, blood, urine, or saliva for the purpose of determining the alcoholic content of his blood provided that such test is administered at the direction of a police officer having reasonable grounds to believe such person to have been driving in an intoxicated condition or, while his ability to operate such motor vehicle * # * was impaired by the consumption of alcohol, and in accordance with the rules and regulations established by the police force of which he is a member ”.
The District Attorney emphasizes that these conditions were complied with.
The People likewise allude to the other provisions of the statute which subject the operator, after refusal to submit to a blood test after arrest, to temporary suspension and final revocation of his driver’s license. They contend that the lack of defendant’s affirmative consent to the blood test, due to his unconscious condition at the time his blood was withdrawn, does not render the results of the test inadmissible in this prosecution for vehicular homicide under section 1053-a of the Penal Law, although they concede that such a test might be inadmissible in a prosecution under section 1192 of the Vehicle and Traffic Law for driving while intoxicated or while one’s ability to drive is impaired by consumption of alcohol.
*543 We are asked by the People, in determining the reasonableness of the police action in this instance, to consider the substantial public interest in “ careful considerate police action ”, as here shown, in preventing and reducing the continually mounting toll of dead and injured victims of motor vehicle accidents on our highways, through the use of the methods here employed for the determination of intoxication. The People argue that in the light of such considerations the taking and testing of defendant’s blood was not, under the circumstances here present, an unreasonable search and seizure, and did not constitute a violation of his constitutional rights and privileges. They rely upon the 1957 decision of the United States Supreme Court in Breithaupt v. Abram (352 U. S. 432) and People v. Hargrave (40 Misc 2d 556 [1963, Supreme Ct., N. Y. County]), both of which will be hereinafter discussed.
I. As to defendant’s first ground for suppression: Section 1192 of the Vehicle and Traffic Law provides that on the trial of an action against a person arrested for operating a motor vehicle while in an intoxicated condition, ‘ ‘ the court may admit evidence of the amount of alcohol in the defendant’s blood taken within two hours of the time of his arrest, as shown by a medical or chemical analysis of his * * * blood”. (Emphasis supplied.) Subdivision 1 of section 1194 of that statute, after providing that a person who operates a motor vehicle in this State shall be deemed to have consented to a chemical test of his blood to determine its alcoholic content, further provides: “If such person having been placed under arrest and having thereafter been requested to submit to such chemical test refuses to submit to such chemical test the test shall not be given but the commissioner shall revoke his license or permit to drive (Emphasis supplied.)
In the application of that statute our courts have held that in a prosecution for criminal negligence (as here) and for reckless driving, evidence of alcohol content in the blood of the defendant driver, who was not under arrest and was unconscious at the time the blood sample was taken, was inadmissible before the Grand Jury and was illegal, and required the dismissal of the indictment founded thereon (People v. McConnell, 19 Misc 2d 1050, 1052; and see, to same effect, People v. Dietz, 5 Misc 2d 517, 519 — evidence of intoxication based on urinalysis made prior to arrest held inadmissible in prosecution for driving while intoxicated). And in other decisions our courts have held in effect that the provisions of sections 1192 and 1194 of the Vehicle and Traffic Law, permitting the admission of evidence of alcoholic content of the blood of defendants in prosecutions *544 for driving while intoxicated, can only be construed constitutionally on the basis that the blood test be voluntary (People v. Butts, 21 Misc 2d 799) and can only be applied constitutionally where the defendant has been duly arrested and has voluntarily submitted to such blood test (Matter of Sehutt v. Macduff, 205 Misc. 43).
In the case at bar, defendant was not under arrest when his blood was taken; he had not consented to the taking, nor had he been arrested for nor charged with driving in an intoxicated condition. Upon consideration of all the provisions of section 1194, we think it is clear that the consent to a blood test deemed therein to be given by a licensed motor vehicle operator, is limited in its application to proceedings by the Motor Vehicle Commissioner for revocation of the license to drive of one who refuses to submit to a blood test, after having been placed under arrest.
Indeed, the prima facie presumptions of intoxication, specified in the companion section 1192 as arising from evidence of the various percentages by weight of alcohol in a defendant’s blood based upon an analysis of a sample thereof taken with his consent, are expressly restricted in that section to prosecutions of persons arrested for operating a motor vehicle while in an intoxicated condition.
In People v. Leis (13 A D 2d 22 [4th Dept., 1961]) it was held, on the trial of a defendant for criminal negligence under section 1053-a of the Penal Law, that the presumption of intoxication created under section 1192 arises and is applicable only on the trial of a person on a charge of operating a motor vehicle while in an intoxicated condition in violation of section 1192, and is not applicable on the trial, as here, of a charge for violation of section 1053-a of the Penal Law.
Presiding Justice Williams said, in writing for a unanimous court (p. 25): “The only charge was for violation of section 1053-a of the Penal Law which is a completely different crime than that specified in subdivision 5 of section 70 [now § 1192], and with separate and more drastic penalties. There is nothing in, or applicable to, section 1053-a concerning presumptions. That being so, there was no presumption that would apply from the mere presence of a certain amount of alcohol by weight in defendant’s blood. Furthermore, the language, ‘ for the purposes of this section’ cannot be construed to mean for the purposes of determining whether any other penal section has been violated”.
It was similarly so held in People v. Manning (7 A D 2d 1008 [2d Dept., 1959]).
*545 But in our opinion the decision of the Appellate Division in People v. Lets (supra) as to the restricted application of the section 1192 presumptions of intoxication, is not similarly applicable to the results of blood tests taken in accordance with the provisions of section 1194. It would appear that the use as evidence of the results of such blood tests, where made with the driver’s consent after a legal arrest with or without a warrant, was not intended by the Legislature to be restricted exclusively to the Motor Vehicle Commissioner’s drivers’ license revocation proceedings provided for in that section, and to prosecutions of persons arrested for operating a motor vehicle while in an intoxicated condition under section 1192. We think such evidence would be admissible in a prosecution under section 1053-a of the Penal Law, provided the same conditions of prior arrest and consent of the accused to the blood test were present. However, We reach the conclusion that the results of the blood test here taken prior to defendant’s arrest and without his consent are inadmissible in evidence against him on the trial of these indictments for criminal negligence in violation of section 1053-a of the Penal Law, because the police methods by which such evidence was obtained Avere violative of defendant’s constitutional rights against illegal search and seizure hereinafter discussed.
II. As to defendant’s second and fourth grounds for suppression— that the taking of defendant’s blood sample under the circumstances here present constituted an unreasonable search and seizure in violation of his rights under the Fourth Amendment and under section 12 of article I of the New York Constitution: — These counterpart provisions prohibit unreasonable searches and seizures. We think it eAddent that the offer of testimony in a criminal prosecution of the results of a chemical test performed on a sample of blood Avithdrawn from a person, for determination of alcohol content in the course of police action, constitutes the offer of real evidence. The seizure of such real evidence by police action presents the same questions as to reasonableness as do the search and seizure of any other real evidence. Consequently, the admission or exclusion of such evidence is determinable by the same rules of exclusion as are applicable in a search and seizure situation. The question then is, did the taking of defendant’s blood under the circumstances in this case constitute an unreasonable search and seizure. If it did, the anticipated testimony of the results of the blood test must be suppressed and excluded.
The reasonableness of a State search and seizure is held by the United States Supreme Court to be governed by Federal *546 constitutional standards as expressed in the Fourth Amendment and the decisions of that court applying that amendment (Ker v. California, 374- U. S. 23 [1963]). In Ker, the Supreme Court noted first, that Mapp v. Ohio (367 U. S. 643) established no assumption by that court of supervisory authority over State courts and, consequently, it implied no total obliteration of State laws relating to arrests and searches in favor of Federal law; second, that Mapp did not attempt the impossible task of laying down a fixed formula for the application in specific cases of the constitutional prohibition against unreasonable searches and seizures; but that it did recognize that, ‘ ‘ at any rate, ‘ [r] easonableness is in the first instance for the [trial court] * * * to determine ’ ” (Mapp, 367 U. S. 643, 653), thus indicating that the usual weight be given to findings of trial courts.
The Supreme Court goes on to say in Ker {supra, pp. 33-34): “ We reiterate that the reasonableness of a search is in the first instance a substantive determination to be made by the trial court from the facts and circumstances of the case and in the light of the ‘ fundamental criteria ’ laid down by the Fourth Amendment and in the opinions of this Court applying that Amendment. Findings of reasonableness, of course, are respected only insofar as consistent with federal constitutional guarantees. As we have stated above and in other cases involving federal constitutional rights, findings of state courts are by no means insulated against examination here. ’ ’ And at page 34: “ The States are not thereby precluded from developing workable rules governing arrests, searches and seizures to meet ‘ the practical demands of effective criminal investigation and law enforcement ’ in the States, provided that those rules do not violate the constitutional proscription of unreasonable searches and seizures and the concomitant command that evidence so seized is inadmissible against one who has standing to complain.”
It is clear that the constitutional guarantee against unreasonable searches and seizures, as a general proposition, protects against searches made without a warrant, and against personal searches made before a legal arrest to which a search of the person may be incident. Here the defendant had not been arrested nor had his consent been obtained prior to the administering of the blood test. We think the withdrawal of blood constituted a search of and seizure from the person of the defendant in the constitutional sense, and, under the circumstances, the search and seizure were unreasonable, in the absence of a search warrant, and were in violation of the constitutional guarantees against unreasonable search and seizure.
*547 In an identical factual situation, the Supreme Court of Wisconsin, in State v. Kroening (274 Wis. 266, 272-273) had this to say, in rejecting the State’s argument that the taking of the blood sample was not a search or seizure in the constitutional sense: “we do not concede that the right to security of person specified by sec. 11, art. I, Wis. Const, does not extend to portions of the body as well as to its entirety. Surely that security is impaired if public officials may, without consent and without arrest, stick needles into human bodies and draw off and carry away such of the body’s contents as the officials deem expedient. * * * It is thoroughly recognized that property on the person is not to be seized by zealous officers who have no search warrant and who have not made a valid arrest. * * * We do not understand that the constitutional provision in question forbids officers to go through one’s pockets but permits them to go through his veins.”
In State v. Kroening (supra) defendant was charged with negligent homicide arising out of the deaths of four persons in a motor vehicle accident; while he was in a semiconscious state in a hospital, and not under arrest, but smelling of liquor, a sample of his blood was taken by a registered nurse, with the consent of the attending physician at the request of the District Attorney, for analysis to determine the alcoholic content thereof. The results of the alcohol blood test were admitted in evidence upon trial over defendant’s timely motion to suppress such evidence upon constitutional grounds, including the violation of the State’s constitutional prohibition against unreasonable search and seizure. Defendant was convicted.
On appeal, the Wisconsin Supreme Court held that the taking of the blood sample from defendant without his consent, and under the circumstances related, constituted an unreasonable search and seizure in violation of the State’s constitutional prohibition; and that the admission of evidence as to the alcoholic content disclosed by the analysis of such blood constituted a denial by the State of due process of law in violation of the due process clause of the Fourteenth Amendment.
Thus, the Wisconsin court held that the means by which the State came into possession of defendant’s blood sample constituted a search and seizure, without warrant and not incident to a lawful arrest, which was consequently an illegal one, and therefore unreasonable, and the testimony regarding the analysis of the blood was inadmissible on his trial for negligent homicide.
In State v. Weltha (228 Iowa 519) defendant motorist was prosecuted for manslaughter, charged with the death of an occupant of another vehicle resulting from driving while under *548 the influence of intoxicating liquor. Seriously injured, he was taken to a hospital and while unconscious in an operating room, the Coroner of another county, without a warrant and without defendant’s consent, took a sample of his blood to be used to make or sustain possible future criminal prosecution, the defendant having not then been arrested and no information having been filed against him.
The Iowa Supreme Court held that the trial court was in error in receiving in evidence, over defendant’s timely objection, the blood sample and the testimony of experts based thereon (citing authorities collected in a note to United States v. Lefkowitz, 285 U. S. 452; Ann. 82 A. L. R. 775, 782).
As was observed in State v. Kroening (supra, p. 272) it is well settled that: “ No search of the person or seizure of any article found thereon can be made on mere suspicion that the person searched is violating the law, or without a search warrant, unless and until the alleged offender is in custody under a warrant of arrest or shall be lawfully arrested without a warrant as authorized by law 47 Am. Jur., Searches and Seizures, p. 533, sec. 53.”
The People, on the other hand, in strenuously urging that the withdrawal of blood in this case does not constitute an unreasonable search and seizure, place their reliance upon the 1957 decision of the United States Supreme Court in Breithaupt v. Abram (352 U. S. 432, supra) wherein Breithaupt had been convicted in a New Mexico court of involuntary manslaughter arising out of a fatal motor vehicle accident in which he was involved and seriously injured. In affirming the conviction, the majority of the divided court held that the police conduct in obtaining a chemical test of defendant’s blood alcohol content, and the admission, over objection, of evidence of the results of the test and an expert’s testimony based thereon that a person with .17% alcohol in his blood was under the influence of intoxicating liquor, did not deprive defendant of due process of law in violation of the Fourteenth Amendment.
The facts in Breithaupt are strikingly similar to those in the case at bar. Breithaupt, while driving a truck on a New Mexico highway, was involved in a collision which resulted in the deaths of three persons and his serious injury. While he was lying unconscious in the emergency room of a hospital, the smell of liquor was detected on his breath, and a State patrolman requested that a sample of his blood be taken. An attending physician, using a hypodermic needle, withdrew a blood sample which, on laboratory analysis contained about .17% alcohol. He was thereafter charged with involuntary manslaughter and con *549 victed thereof. At his trial, evidence of the blood test and its result, together with expert testimony that a person with .17 % alcohol in his blood was under the influence of intoxicating liquor, was admitted over defendant’s objection.
Breithaupt urged that the evidence based on the results of the blood test used was obtained in violation of the due process clause of the Fourteenth Amendment, in that the taking was the result of an unreasonable search and seizure violative of the Fourth Amendment, and that there was a violation of the Fifth Amendment in that the introduction of the test result compelled him to be a witness against himself.
In rejecting the claimed protection of the Fourth and Fifth Amendments, via the due process clause of the Fourteenth Amendment, Mr. Justice Clark (p. 434) cited Wolf v. Colorado (338 U. S. 25 [1949]) to the contrary, since New Mexico had “ rejected, as it may, the exclusionary rule set forth in Weeks [v. United States, 232 U. S. 383 (1914)] ” which excluded in Federal criminal prosecutions evidence obtained in violation of rights protected by the Fourth Amendment. Justice Clark then continued (p. 434): “ Therefore, the rights petitioner claims [under the Fourth and Fifth Amendments] afford no aid to him here for the fruits of the violations, if any, are admissible in the State’s prosecution.”
In the course of distinguishing prior decisions wherein State court convictions were reversed because the police methods of obtaining evidence against the accused were found violative of the Fourteenth Amendment’s due process clause (Rochin v. California, 342 U. S. 165, 172 [1952]; Brown v. Mississippi, 297 U. S. 278, 285-286 [1936]). Mr. Justice Clark continued (pp. 435-437): “ Basically the distinction rests on the fact that there is nothing ‘ brutal ’ or ‘ offensive ’ in the taking of a sample of blood when done, as in this case, under the protective eye of a physician. To be sure, the driver here was unconscious when the blood was taken, but the absence of conscious consent, without more, does not necessarily render the taking a violation of a constitutional right; and certainly the test as administered here would not be considered offensive by even the most delicate. * * * We therefore conclude that a blood test taken by a skilled technician is not such ‘ conduct that shocks the conscience,’ Bochin, supra, at 172, nor such a method of obtaining evidence that it offends a ‘ sense of justice, ’ Brown v. Mississippi, 297 U. S. 278, 285-286 (1936).”
It is evident from Justice Clark’s opinion for the majority in Breithaupt that the Supreme Court, having not yet reached Mapp, was content to uphold the use of the blood test as embraced *550 within a concept of Fourteenth Amendment due process established in Wolf v. Colorado (supra). That concept was expressed' by the court in Irvine v. California (347 U. S. 128, 132 [1954]) in these terms: “ The decision in Wolf v. Colorado, 338 U. S. 25, 27, for the first time established that ‘ [t]he security of one’s privacy against arbitrary intrusion by the police ’ is embodied in the concept of due process found in the Fourteenth Amendment. ’ ’
And at page 133: “ However obnoxious are the facts in the case before us, they do not involve coercion, violence or brutality to the person, but rather a trespass to property, plus eavesdropping. ’ ’
Suffice it to say that we need not here consider further, or for that matter determine, whether the police action in this instance was violative of the Wolf v. Colorado or of the Breithaupt v. Abram concepts of due process under the Fourteenth Amendment, having heretofore determined that said police action constituted an unreasonable search and seizure violative of the New York and Federal constitutional prohibitions against such a search and seizure.
We conclude, accordingly, that Breithaupt, in the light of Mapp v. Ohio, as analyzed in Ker v. California (supra) is not controlling on the issues here presented as to whether the police action here constituted a search and seizure, and, if it did, whether such search and seizure were violative of the New York and Federal constitutional prohibition against unreasonable searches and seizures.
If the Breithaupt facts were today to be represented to the Supreme Court, we think it reasonable to anticipate, in the light of Mapp v. Ohio, that the court would condemn the police action here as an illegal, search and seizure violative of the Fourth Amendment.
Again, the People’s reliance upon the recent decision in People v. Hargrave (40 Misc 2d 556 [1963, Supreme Ct., N. Y. County]) as sustaining the police action in this case, is also misplaced. In Hargrave, defendant was rendered unconscious in an automobile accident and was taken to a hospital where, in order to diagnose and treat his injuries, he was disrobed, whereupon a loaded pistol was found on his person. He was subsequently indicted for criminally carrying and possessing a concealed pistol.
On Hargrave’s motion to suppress the pistol as evidence, on the ground that by reason of his unconscious condition he was unable to consent to a search and therefore the search was illegal, the court (Davidson, J.) held that there was obviously no gov *551 crnmental intrusion into defendant’s privacy, that he was necessarily and legally disrobed for diagnosis and treatment, and that he must be deemed to have consented to the disrobing by the hospital employee. The motion to suppress was accordingly denied. Obviously, Hargrave is not in point in the case at bar.
III. Defendant’s final contention, that the withdrawal of his blood and the admission of evidence of the results of the chemical test thereof, and of testimony in relation thereto, would violate his Fifth Amendment privilege against self incrimination, is not sustained by the weight of controlling authority.
We are aware of Mr. Justice Black’s view that a person is compelled to be a witness against himself not only when he is compelled to testify, but also when incriminating real evidence is forcibly taken from him by a contrivance of modem science (cf. Rochin v. California, 342 U. S. 165, 175, supra); and also of Mr. Justice Douglas’ view that “ words taken from his [the accused’s] lips, capsules taken from his stomach, blood taken from his veins are all inadmissible provided they are taken from him without his consent. They are inadmissible because of the command of the Fifth Amendment.” (Cf. Rochin v. California, supra, p. 179.)
Nevertheless, these views do not appear to have been expressed as the majority view of the Supreme Court in Bochin (supra) nor in Breithanpt (supra). (Bochin involved the admission in evidence of morphine capsules forcibly taken from defendant by a stomach pump on the trial of a charge of illegal possession of morphine.) On the other hand, the Supreme Court has said, per Holmes, J., in Holt v. United States (218 II. S. 245, 252-253): “ [T]he prohibition of compelling a man in a criminal court to be a witness against himself is a prohibition of the use of physical or moral compulsion to extort communications from him, not an exclusion of his body as evidence when it may be material.”
Again, the decisions of this State have limited the effect of the New York constitutional provision against self incrimination (Canst, art. I, § 6) to protect only as against testimonial compulsion, that is, as to disclosures by utterance, oral or written (see People v. Defore, 242 N. Y. 13; People v. Van Wormer, 175 N, Y. 188 and, cf., Matter of Schutt v. Macduff, 205 Misc. 43, supra), in People v. Duroncelay (48 Cal. 2d 766, 770) which involved the taking of a blood test without defendant’s consent but incident to a lawful arrest, it was held that the admission of evidence of the results of the blood test in a prosecution for the felony of drunken driving causing persona] injury did not violate *552 defendant’s privilege against self incrimination 11 because the privilege relates only to testimonial compulsion and not to real evidence.” And, see, to the same effect the decision of the Superior Court of Pennsylvania in a blood alcohol test — prosecution for driving while intoxicated resulting in a fatal collision situation, in Commonwealth v. Tanchyn (200 Pa. Super. Ct. 148).
We reach the conclusion that the police methods in taking the blood of defendant, under the circumstances of this ease, constituted an illegal search and seizure of the person and property of the defendant in violation of his rights under section 12 of article I of the New York Constitution and of the Fourth Amendment to the United States Constitution, to protection against unreasonable search and seizure. This requires the suppression as evidence of the results of the blood test and of all testimony in connection therewith upon the trial of the indictment herein. The motion to suppress is granted.