132 N.J. Super. 597 (1974)
334 A.2d 398
STATE OF NEW JERSEY, PLAINTIFF,
v.
JOHN J. AMANIERA, DEFENDANT.
Superior Court of New Jersey, Middlesex County Court, Law Division.
December 18, 1974.
*599 Mr. Ronald G. Kercado, Assistant Prosecutor, for the State (Mr. C. Judson Hamlin, Acting Prosecutor of Middlesex County, attorney).
Mr. Jeffrey Weingard, of the New York Bar, for defendant.
COHEN, J.C.C.
Defendant was indicted for causing death by auto. He moves for suppression of blood alcohol test results on two theses: first, that the test arose out of a confidential physician-patient relationship, and second, that the results were the fruits of an unlawful seizure of his blood in violation of the Fourth Amendment.
I find the following facts: On August 13, 1973 defendant was involved as a driver in an automobile accident. A passenger in defendant's vehicle was killed and another was seriously injured. Police officers on the scene found defendant uncooperative, bellicose, unrestrained and abusive. His speech was slurred. He had a strong odor of alcoholic beverage on his breath. He was bleeding from head cuts. Although elements of his behavior may have been attributable to his recent experience and its tragic consequences, the investigating police officers certainly had probable cause to believe, and did believe, that defendant had been driving while intoxicated or impaired. N.J.S.A. 39:4-50. Defendant was transported to John F. Kennedy Hospital for the purpose of medical attention. He arrived there at about 11 P.M. He was seen in the emergency room, and X-rays were taken.
Because defendant was bleeding from his left ear, Dr. Friedman, a neurosurgeon, was called in. He saw defendant shortly after 2 A.M. Although skull X-rays were negative, Dr. Friedman felt unable to rule out serious injury. *600 Defendant was alert and cooperative, but his attention wandered and his physical coordination caused concern. Dr. Friedman smelled alcoholic beverage on defendant's breath and ascertained from him that he had been drinking. For diagnostic purposes, therefore, he ordered blood drawn for a blood alcohol test. He wished to determine if defendant's conduct arose from trauma or alcohol in order to establish a baseline from which to measure defendant's future medical course.
The doctor's order was transmitted by a nurse to the hospital laboratory technician who arrived some 15 minutes later and drew a sample of defendant's blood. The technician was trained and experienced in the procedure and went about it in a reasonable and regular way, without opposition by defendant. No real issue exists as to the medical acceptability of the means employed in the hospital. There is some question as to whether, how, when and by whom a written consent was obtained from defendant. The testimony on this subject was distressingly disparate. I pass the problem, however, because actual consent is unnecessary, State v. Macuk, 57 N.J. 1 (1970), and because the evidence, viewed in its best light, fails to show that defendant intelligently waived any existing right to confidentiality or any existing Fourth Amendment objection to the seizure of his blood.
At some time soon after Dr. Friedman ordered a blood alcohol test police officers appeared and requested him to perform the same test for law enforcement purposes. Dr. Friedman told them he already had ordered it. The credible evidence does not show whether, at that time, blood had already been drawn by the technician. Plainly, however, defendant was in Dr. Friedman's care and was still in the course of emergency room treatment. He was released at 4:15 A.M. into the custody of police officers who placed him under arrest for driving while intoxicated, disregarding a red traffic light, and causing death by auto.
*601 Nothing occurred between 2 and 4:15 A.M. that generated the arrest. An Edison officer had been on duty near the emergency room continuously since 11 P.M. in the event defendant's difficult conduct again arose. The blood test results were not completed for some days, at which time they were released to the police under an ex parte order entered by the municipal court without notice or formal application. The authority for this order is not at all clear. The State and defendant agree it has no effect in these proceedings.
Regarding the Fourth Amendment argument, Schmerber v. California, 384 U.S. 757, 86 S.Ct. 1826, 16 L. ed. 2d. 908 (1966), authorizes the warrantless seizure of a blood sample for testing for alcohol content if the seizure is pursuant to a lawful arrest, is based upon probable cause to believe the person was driving while intoxicated, and is done in a medically acceptable manner. The latter two elements of the Schmerber test were plainly present here. Defendant argues, however, that the taking of blood was not pursuant to a lawful arrest and therefore must be held unlawful. There are three answers.
First, the seizure of blood did not generate or underpin the arrest. It occurred about two hours before the arrest, which was delayed because defendant was undergoing emergency hospital treatment. The timing was totally fortuitous. In these circumstances the seizure was substantially contemporaneous with and pursuant to the arrest, which awaited only the end of needed medical attention.
Second, the lawfulness of the seizure does not depend on the fact of an arrest or upon its timing. It is sufficient that probable cause exists. The California courts have held that Schmerber condemns a warrantless blood seizure absent an arrest, despite the existence of probable cause. People v. Superior Court of Kern County, 100 Cal. Rptr. 281, 493 P.2d 1145 (Sup. Ct. 1972). The New Jersey courts have not. State v. Gillespie, 100 N.J. Super. 71 (App. Div. 1968); State v. Tolbert, 100 N.J. Super. 350 (Law Div. 1968). Rather, emergency circumstances, arising *602 out of the potential loss of evidence, coupled with medically acceptable means, probable cause and a not unreasonable period of confinement, are sufficient. California's reading of Schmerber would require the officers here to invade the emergency treatment area to announce an arrest to defendant before requesting the blood alcohol test. It is not clear they could have. Common sense does not tell why they should have. Defendant had no choices to make, turning on the fact or absence of such an announcement. The law does not require police officers to do pointless things. Defendant was effectively immobilized in the hospital treatment facilities. The police were waiting outside the door for completion of treatment. Absence of formal arrest should have no legal significance in such circumstances.
Third, the order to draw blood was given by Dr. Friedman before the officers made their request and was carried out pursuant to his order, not because of the officers' request. The doctor's order was medically motivated. It followed his decision to test for diagnostic purposes. He was not acting for the police at the time but was, rather, acting independently of the contemporaneous official investigation. His order and its execution was therefore purely private action and not subject to Fourth Amendment restrictions. State v. Scrotsky, 39 N.J. 410 (1963); State v. Frank, 112 N.J. Super. 592 (App. Div. 1971).
Defendant also argues that the test results are privileged as arising out of a physician-patient relationship. I have heard this matter, since the evidence is inescapably intertwined with the Fourth Amendment motion, and have passed the question whether it is appropriately considered at this time.
N.J.S.A. 2A:84A-22.1 et seq. creates a statutory privilege against disclosure of confidential communications between a physician and his patient, including information obtained by an examination of the patient, where reasonably believed to be necessary or helpful to diagnosis or treatment. On a definitional level, the blood test results plainly *603 fall within the privilege. They arose out of oral communications at a time when Dr. Friedman was examining defendant for diagnostic purposes and were generated by the doctor's desire to gain further information for those purposes. Defendant did not consent to voluntary disclosure.
Before the privilege was enacted our Supreme Court said that confidential material arising out of the physician-patient relationship ought to be disclosed only where the public interest requires it. Hague v. Williams, 37 N.J. 328 (1962). In the statute creating the privilege the Legislature listed five specific exceptions. Those exceptions, it seems to me, include all those situations in which the Legislature thought the public interest required disclosure. None of them apply here.
The State argues that the strong public policy against drunken driving means the Legislature could not have meant to exclude blood alcohol tests in these circumstances. The answer is that the privilege applies to criminal prosecutions and the public policy is no stronger in drunken driving cases than in murder, rape, kidnapping or other grave prosecutions to which the privilege plainly applies. Compare D. v. D., 108 N.J. Super. 149 (Ch. Div. 1969).
The State further argues that I should not apply the privilege because the police were standing by, prevented from acting only by reason of ongoing medical attention. The answer is that application of the privilege depends on the relationship of defendant to his doctor and not upon police propinquity. Compare Doss v. State, 256 Ind. 174, 267 N.E.2d 385 (Sup. Ct. 1971), where the presence of a police officer during a medical procedure with the patient's knowledge was held to waive confidentiality.
The issue presented here was before the Indiana Supreme Court in Alder v. State, 239 Ind. 68, 154 N.E.2d 716 (1955), a death-by-auto case in which defendant was brought unconscious to the hospital. Blood was drawn for typing purposes for a transfusion. Part of the drawn blood was given to a policeman who had requested blood to test for alcohol. *604 It was then examined by a police laboratory. The court held that a privilege statute, not importantly different from ours, barred use of the blood alcohol test results.
One may well question the social value of a statute that bars use of otherwise truthful evidence to preserve the sanctity of an emergency room relationship between two persons unknown to each other five minutes before. See, generally, 8 Wigmore, Evidence, § 2380 et seq. (1961). One may sensibly question the utility of a privilege that could persuade police officers to withhold or interrupt medical treatment to perform valid law enforcement testing. But that is for the Legislature to wrestle with. However narrowly I may wish to construe the privilege, it plainly bars the evidence in question here.
Defendant's motion is granted.