PEOPLE v MORSE

OPINION OF THE COURT

1. CRIMINAL LAW—SEARCHES AND SEIZURES—BLOOD ALCOHOL TESTS—
   STATUTES—IMPLIED CONSENT—SEARCH WITHOUT WARRANT—EV-
   IDENCE.

   The implied consent embodied in the statutes prescribing blood
   alcohol tests for offenses involving drinking and driving does
   not apply in a case where a blood sample is taken from an
   unconscious person prior to his arrest and without his consent,
   but the results of such a search without a warrant are never-
   theless admissible in evidence against a defendant where the
   police officer ordering the test had probable cause to believe
   that a crime had been committed, that evidence of that crime
   could be found in the defendant's blood stream, and that an
   immediate search was necessary to prevent the loss of that
   evidence (MCLA 257.625a; MSA 9.2325[1], MCLA 257.625c;
   MSA 9.2325[3]).

2. CONSTITUTIONAL LAW—SEARCH WITHOUT WARRANT—BLOOD SAM-
   PLES—EXIGENT CIRCUMSTANCES—REASONABLE CONDUCT.

   A nonconsensual seizure of a blood sample from a defendant
   without a warrant is not violative of the Fourth or Fourteenth
   Amendments to the United States Constitution where there are
   exigent circumstances and where the seizure is conducted in a
   reasonable manner.

DISSENT BY T. M. BURNS, J.

3. CONSTITUTIONAL LAW—SEARCHES AND SEIZURES—BLOOD ANALYSIS—
   UNCONSCIOUS PERSON—FAIR TREATMENT—EVIDENCE.

   *The taking of blood for purposes of analysis from the person of
   one who is unconscious at the time constitutes a violation of
   the concept underlying the Bill of Rights that each individual
   has the natural right to be treated by the state with decency,*

REFERENCE FOR POINTS IN HEADNOTES
[1–3] 21 Am Jur 2d, Criminal Law §§ 357, 364, 366.

*respect and fairness; evidence based on such an analysis should not be admitted.*

Appeal from Oakland, James S. Thorburn, J. Submitted February 11, 1976, at Lansing. (Docket No. 23217.) Decided March 24, 1976. Leave to appeal applied for.

Harold J. Morse was charged with manslaughter. Defendant moved to suppress the results of a blood alcohol test from evidence. Motion denied. Defendant appeals by leave granted. Affirmed.

*Frank J. Kelley,* Attorney General, *Robert A. Derengoski,* Solicitor General, *L. Brooks Patterson,* Prosecuting Attorney, *Robert C. Williams,* Chief Appellate Counsel, and *James L. McCarthy,* Assistant Appellate Counsel, for the people.

*Taylor, Carter, Butterfield, Riseman & Clark, P. C.,* for defendant.

Before: D. E. HOLBROOK, JR., P. J., and D. E. HOLBROOK and T. M. BURNS, JJ.

D. E. HOLBROOK, J. Defendant appeals by leave granted from an order of the court below denying his motion to suppress certain evidence.

The concise statement of proceedings and facts, certified by the court below, states:

"Defendant, Harold J. Morse, was involved · in an automobile collision on February 14, 1974 in Orion Township, Oakland County. The driver of the other automobile was killed and defendant was seriously injured and rendered unconscious. Defendant was removed to Crittendon Hospital in Rochester, where he remained in an unconscious state. While thus unconscious, defendant was subjected to a blood alcohol test by hospital personnel, acting at the direction of the

police. No consent to said test had been given nor had any arrest been made.

"Defendant was subsequently charged with the crime of manslaughter. Defendant's Motion to Suppress the results of the blood test was denied by Circuit Judge Thorburn in an Order entered December 5, 1974."

The sole question before us is whether or not the results of a blood alcohol test taken from an unconscious person without his consent and prior to arrest are admissible in a criminal prosecution for manslaughter in the State of Michigan. We agree with the court below and hold that, in this case, the results of the blood alcohol test are admissible.

As a preliminary matter, we point out that the implied consent embodied in MCLA 257.625a; MSA 9.2325(1) and MCLA 257.625c; MSA 9.2325(3), does not apply in this case. *People v Keen,* 56 Mich App 84; 223 NW2d 700 (1974).

Defendant next argues that the search and seizure should have been suppressed since it was not incident to a valid arrest. We first note that it would be ridiculous to require a police officer to perform some formal ritual of arrest over the unconscious body of a critically injured person who was a party to a fatal automobile accident. At any rate, the validity of a warrantless search and seizure is not dependent upon the existence of a prior valid arrest, as defendant seems to argue. The test is whether under all the circumstances, the search and seizure was reasonable. *People v Evans,* 3 Mich App 1; 141 NW2d 668 (1966). A warrantless search is proper if the officer had probable cause to believe that a crime had been committed and probable cause to believe that evidence of the crime in question will be found. If there is probable cause to believe that a search

would disclose evidence of a crime, then the officer must have probable cause to believe that an immediate, warrantless search is necessary in order to (1) protect himself or others, (b) prevent the destruction or loss of evidence, or (c) prevent the escape of the accused. *People v Frank Smith,* 43 Mich App 400; 204 NW2d 308 (1972), *People v Character #1,* 32 Mich App 40; 188 NW2d 12 (1971). The lower court ruling on the motion to suppress was based upon evidence introduced by the prosecution which tended to show that the officer who directed that the blood sample be taken had probable cause to believe that a crime had been committed, and probable cause to believe that evidence of the crime in question could be found in the defendant's blood stream. It is a well-known fact, of which we hereby take judicial notice, that, given time, the alcohol content of a person's blood will sharply decline once the person ceases his intake of alcohol. It was argued below that for this reason the officer had probable cause to believe than an immediate search was necessary without obtaining a warrant in order to prevent the loss of evidence.

Defendant does not contest the fact that the above-mentioned evidence was sufficient for the lower court to uphold the reasonableness of the search. He rather asserts that, as a matter of Michigan constitutional law, such a search can never be upheld. He bases this argument on the case of *Lebel v Swincicki,* 354 Mich 427; 93 NW2d 281 (1958). *Lebel* was a negligence action stemming from a fatal automobile accident. In that case, the defendant was removed from the scene of the accident and transported to a hospital in Cadillac, Michigan. While the defendant was unconscious a sample of his blood was taken at the

direction of the attending physician. The sample was placed in a vial and given to a state trooper who then transported it to the state police post in Cadillac. The vial of blood eventually was analyzed by the state crime laboratory in Lansing, where it was established that the blood had a .15 percent alcohol content. The defendant never consented to the taking of the blood nor was he ever arrested or charged with any crime connected with the accident. The Michigan Supreme Court held that the results of the blood analysis were not admissible into evidence because they were in violation of Const 1908, art 2, § 10. In so holding, the Michigan Supreme Court discussed the case of *Breithaupt v Abram*, 352 US 432; 77 S Ct 408; 1 L Ed 2d 448 (1957). The Michigan Supreme Court read the *Breithaupt* case to say that the blood sample taken under circumstances somewhat analogous to those present in *Lebel* would have been a violation of the US Const, Am IV. Reasoning that the Fourth Amendment of the U.S. Constitution and art 2, § 10 of the Constitution of 1908 were identical in substance, the Court stated at 354 Mich 437; 93 NW2d 286, that:

"The conclusion would therefore seem to follow that in accord with the opinion in the *Breithaupt* case testimony taken in a criminal case in Michigan in disregard of the above-quoted provision of the State Constitution should be held inadmissible."

For several reasons, we do not agree with defendant's contention that the *Lebel* case compels reversal here. First, *Lebel* was a civil case which involved no arrest, no criminal charges, and no determination of probable cause. Secondly, we are mindful of a certain interpretation of *Breithaupt*

which is evidenced by the following quote from
*Lebel, supra,* 437; 93 NW2d at 285–286:

> "It was stated in the majority opinion that the evi-
> dence against Breithaupt, having been obtained in vio-
> lation of the 4th Amendment to the Federal Constitu-
> tion, would be subject to exclusion in a criminal prose-
> cution in a Federal court. However, the majority de-
> clined to hold that the conviction in the State court
> should be held improper under the due process clause of
> the 14th Amendment."

We are also aware that another panel of this
Court has read the *Breithaupt* case the same way,
*Gilbert v Leach,* 62 Mich App 722, 725; 233 NW2d
840, 842 (1975), but a close reading of the *Brei-
thaupt* opinion reveals to us no instance wherein
the Court stated that the conduct in that case
violated the Fourth Amendment. The opinion
stated that, even if the conduct did violate the
Fourth Amendment, this would be of no avail to
the defendant since at that time the Fourth
Amendment did not operate to exclude the fruits
of unreasonable searches and seizures from state
courts through the Fourteenth Amendment. The
Court stated: "Therefore, the rights petitioner
claims afford no aid to him here for the fruits of
the violations, *if any,* are admissible in the state's
prosecution." (Emphasis added.) *Breithaupt, supra,*
352 US 434; 77 S Ct 410; 1 L Ed 2d 450. Third,
however *Breithaupt* was read at that time, the
issue is now controlled by the case of *Schmerber v
California,* 384 US 757; 86 S Ct 1826; 16 L Ed 2d
908 (1966). *Schmerber* held that a warrantless,
nonconsensual seizure of a blood sample from a
defendant was not violative of the Fourth or Four-
teenth Amendments where there were exigent
circumstances and where the seizure was con-

ducted in a reasonable manner. Thus, to the extent *Breithaupt* is read as advocating prohibition of seizures of blood samples under the Fourth Amendment, it has been overruled by *Schmerber.* Finally, *Lebel* can be read as a case where a warrantless search was conducted without one of the exceptions to the warrant requirement being present. So read, *Lebel* is readily distinquishable from facts such as those present in this case. For, as previously indicated, the evidence introduced below was sufficient to support a finding that the officer who requested the extraction of the blood sample from defendant had probable cause to believe a felony had been committed and had probable cause to believe that defendant's blood contained evidence thereof. The officer was excused from obtaining a warrant by virtue of his knowledge that crucial evidence, the alcohol in defendant's blood, would be forever lost if action was not taken immediately.

We therefore hold that the facts of this case do not indicate a violation of the search and seizure provision of either the state or Federal constitutions. The results of the blood alcohol tests taken from defendant while he was unconscious and prior to his arrest are therefore admissible in his criminal prosecution.

Affirmed.

D. E. Holbrook, Jr., J., concurred.

T. M. Burns, J. *(dissenting).* In *Lebel v Swincicki,* 354 Mich 427; 93 NW2d 281 (1958), our Supreme Court held as follows:

"[T]he taking of blood for purposes of analysis from the person of one who is unconscious at the time constitutes a violation of his rights, and that testimony

based on the analysis of such blood should not be admitted in evidence." 354 Mich at 440.

The Court expressly made its holding applicable to criminal cases. 354 Mich at 437. *Lebel* still represents the law in this state. The fact that the United States Supreme Court has seen fit to adopt a different rule for the Federal courts does not affect the validity of *Lebel*. For that reason, I would order that the evidence of the blood test results in the trial below be suppressed.

Personally, I find this kind of police conduct to be unconscionable. The United States Supreme Court justices dissenting in *Breithaupt* and *Schmerber* argued variously that the use in a criminal trial of the results of a blood sample extracted over the defendant's protest or while unconscious violated virtually every constitutional right enjoyed by the individual. My objection to such "forcible blood-letting"[1] does not rest upon a perceived violation of any particular constitutional right, but upon the broad underlying concept that the Bill of Rights renders more concrete: the natural right of the individual to be treated by the state with decency, respect and fairness. Invading a man's body while he lies unconscious, extracting blood and then using such to convict the man of a crime is shocking to the sensibilities. I cannot vote to condone it.

---

[1] *Schmerber v California*, 384 US 757, 779; 86 S Ct 1826, 1840; 16 L Ed 2d 908, 924 (1966), Justice Douglas, dissenting.