The PEOPLE of the State of Colorado,
Plaintiff-Appellee,

v.

Mickey Lee SUTHERLAND,
Defendant-Appellant.

No. 82SA373.

Supreme Court of Colorado,
En Banc.

June 4, 1984.
Rehearings Denied June 25, 1984.

J.D. MacFarlane, Atty. Gen., Charles B. Howe, Deputy Atty. Gen., Joel W. Cantrick, Sol. Gen., John M. Hutchins, Asst. Atty. Gen., Denver, for plaintiff-appellee.

Kevin R. O'Reilly, Glenwood Springs, for defendant-appellant.

NEIGHBORS, Justice.

The defendant appeals the judgment of conviction entered against him by the District Court for Rio Blanco County after a jury found him guilty of three counts of vehicular homicide[1] and two counts of vehicular assault.[2] The defendant raises three issues on appeal. He argues that the term "proximate cause" which is an element in the vehicular homicide and vehicular assault statutes renders both provisions unconstitutionally vague. The defendant further claims that blood-alcohol test results were improperly admitted into evidence for two reasons: (1) A blood sample was obtained from him at a time when he had not been placed under formal arrest; and (2) the prosecution failed to establish the chain of custody necessary to admit the test results and supporting exhibits. We reject the defendant's assignments of error and affirm his conviction.

I.

On January 7, 1981, five young men from Craig, Colorado left that city on their way to a basketball game in Meeker, Colorado. They were in an Audi automobile driven by Rex Dale. At about 7:00 p.m., when they were approximately 3.5 miles north of Meeker on Colorado Highway 13 in Rio Blanco County, the defendant, whom the jury found to be the driver of a 1974

---

**1.** Section 18–3–106, 8 C.R.S. (1978 & 1983 Supp.).

**2.** Section 18–3–205, 8 C.R.S. (1978 & 1983 Supp.).

Oldsmobile, attempted to pass a pickup truck that was pulling a trailer carrying a large water tank. At the point where the defendant began passing the slower moving truck and trailer, double yellow line markings on the road prohibited passing. The Audi and Oldsmobile cars collided head-on, the Oldsmobile being on the wrong side of the road. Three persons in the Audi were killed and two suffered serious bodily injuries. The defendant and his passenger, Albert E. Miller, also sustained injuries. A state trooper, William R. Chrysler, was called to the scene of the collision. After assisting with the dead and injured persons, Trooper Chrysler went to the Pioneer Hospital in Meeker and attempted to determine who was driving the Oldsmobile vehicle. The defendant told the trooper that he was "too drunk to drive, that he was asleep in the back seat," and that Miller was driving. Miller, on the other hand, told the officer that the defendant was the driver. The trooper smelled the odor of alcohol on the breath of both the defendant and Miller. Given these circumstances, the officer directed that blood specimens be drawn from both men, even though he had not arrested either person. Over the next several days, officers of the Colorado State Patrol conducted a further investigation which included interviewing the three eyewitnesses who were in the truck and obtaining the results of the blood-alcohol tests which showed that the defendant had a blood-alcohol level of .175 grams per hundred milliliters of blood. Based on the results of the investigation, Trooper Chrysler filed an affidavit requesting a warrant to arrest the defendant. The warrant was issued by the Rio Blanco County Judge on January 13, 1981.

Following preliminary proceedings in the county and district courts, the defendant filed motions attacking the constitutionality of the statutes under which he was charged and to suppress the results of the blood-alcohol test. The district court denied both motions.

The case proceeded to a jury trial and the defendant was found guilty. His motion for a new trial was denied and he was sentenced to four years at the Colorado Department of Corrections plus one year of parole on each count, the sentences to run concurrently.

## II.

The defendant first claims that the element, "proximate cause," contained in both the vehicular homicide and vehicular assault statutes is unconstitutionally vague. While we recognized that the term "proximate cause" has been the "subject of protracted debate and a source of great confusion in the law of torts," we upheld its constitutional validity in the face of a due process challenge to the identical statutes under the United States and Colorado Constitutions in *People v. Rostad,* 669 P.2d 126, 128 (Colo.1983). Accordingly, *Rostad* is dispositive of the defendant's first argument.

## III.

The defendant's second argument for reversal of his conviction is that his rights under the fourth amendment to the United States Constitution were violated because he was not placed under arrest before a smaple of his blood was drawn. The parties have stipulated that the defendant was not under arrest or in custody when the blood sample was obtained. In deciding this issue, we are guided by the seminal case of *Schmerber v. California,* 384 U.S. 757, 86 S.Ct. 1826, 16 L.Ed.2d 908 (1966), in which the Supreme Court enumerated the criteria that must be established before a blood sample may be obtained involuntarily from a putative defendant. First, there must be probable cause for the arrest of the defendant on an alcohol-related driving offense. Second, there must be a clear indication that the blood sample will provide evidence of the defendant's level of intoxication. Third, exigent circumstances must exist which make it impractical to obtain a search warrant. Fourth, the test must be a reasonable one and must be conducted in a reasonable manner.

In this case, the defendant's principal contention centers around his claim that a defendant must be formally arrested before a blood sample may be taken. The defendant's position has been accepted by a number of courts. *E.g., People v. Superior Court*, 6 Cal.3d 757, 100 Cal.Rptr. 281, 493 P.2d 1145 (1972); *State v. Towry*, 26 Conn.Super. 35, 210 A.2d 455 (1965); *Shores v. State*, 233 So.2d 434 (Fla.App. 1970); *State v. Davis*, 108 N.H. 45, 226 A.2d 873 (1967); *People v. Young*, 42 Misc.2d 540, 248 N.Y.S.2d 287 (Westchester County Ct.1964); *Commonwealth v. Murray*, 441 Pa. 22, 271 A.2d 500 (1970). However, we decline to follow the holdings of those courts which support the defendant's argument. In our view, the constitutional prohibitions against unreasonable searches and seizures require only that there be probable cause to place the defendant under arrest before the blood sample is taken. *See People v. Smith*, 175 Colo. 212, 486 P.2d 8 (1971). The formal arrest of a defendant is not a prerequisite to the obtaining of a blood sample. In his treatise on search and seizure, Professor LaFave states:

> [T]he better view is to the contrary, namely that a "warrantless search is proper if the officer had probable cause to believe that a crime had been committed and probable cause to believe that evidence of the crime in question will be found" and that "an immediate, warrantless search is necessary in order to ... prevent the destruction or loss of evidence." *[People v. Morse*, 68 Mich.App. 150, 242 N.W.2d 47 (1976).] Indeed, the case for permitting a taking of the blood sample upon probable cause that the defendant is intoxicated without first arresting him is, if anything, stronger than the case for the searches conducted in *Cupp [Cupp v. Murphy*, 412 U.S. 291, 93 S.Ct. 2000, 36 L.Ed.2d 900 (1973)] and *Franklin [Franklin v. State*, 18 Md. App. 651, 308 A.2d 752 (1973)]. In the blood sample case, as opposed to those cases, there is no room whatsoever for the argument that the lack of a formal arrest may decrease somewhat the

chances that the evidence will be destroyed, for the "evanescent" character of the evidence is inherent in its nature and does not depend upon any motive of the defendant to destroy it. That is, the need for the blood sample arises out of the fact, as stated in *Schmerber v. California*, "that the percentage of alcohol in the blood begins to diminish shortly after drinking stops," an emergency which is in no way affected by whether or not the defendant has been formally arrested. It is the height of formalism, to say the least, to suggest that a warrantless search on probable cause in order to meet this emergency is reasonable only if the police first declare the hospitalized defendant under arrest. In particular, it "would be ridiculous to require a police officer to perform some formal ritual of arrest over the unconscious body of a critically injured person who was a party to a fatal automobile accident." *[People v. Morse*, 68 Mich.App. 150, 242 N.W.2d 47 (1976).] The claim that the contrary position "provides some measure of assurance that probable cause is based upon considerations independent of the blood-alcohol test results" *[Layland v. State*, 535 P.2d 1043 (Alaska 1975)] is untenable, as the need for a court to determine that probable cause existed prior to the test is present under either rule.

2 W. LaFave, *Search and Seizure* § 5.4, at 343–44 (1978) (footnotes omitted). The conclusion we have reached was forecast by our decision in *People v. Fidler*, 175 Colo. 90, 94, 485 P.2d 725, 727 (1971), where we stated:

> The record here does not disclose when Fidler was arrested. This is not a controlling fact under the circumstances of this case. The patrol officer, given the facts as to the collision, the smell of alcohol on defendant's breath and the finding of two half-emptied wine bottles in defendant's vehicle, had probable cause to direct the withdrawal of the blood.

Other courts have reached the same result. *E.g., Filmon v. State*, 336 So.2d 586 (Fla. 1976); *State v. Mitchell*, 245 So.2d 618 (Fla.1971); *DeVaney v. State*, 259 Ind. 483, 288 N.E.2d 732 (1972); *State v. Findlay*, 259 Iowa 733, 145 N.W.2d 650 (1966); *State v. Graham*, 278 So.2d 78 (La.1973); *State v. Aguirre*, 295 N.W.2d 79 (Minn.1980); *State v. Oevering*, 268 N.W.2d 68 (Minn. 1978) (defendant unconscious); *State v. Deshner*, 158 Mont. 188, 489 P.2d 1290 (1971) (defendant unconscious); *State v. Amaniera*, 132 N.J.Super. 597, 334 A.2d 398 (N.J.L.Div.1974).

Having determined that an arrest is not a precondition to obtaining a blood sample from a person suspected of committing an alcohol-related felony offense, we turn to the issue of whether there was probable cause to permit the involuntary extraction of blood from the defendant.[3] At the hearing on the motion to suppress the results of the blood-alcohol test, the parties stipulated to the relevant facts. At the time he directed medical personnel to obtain a blood sample from the defendant, the state trooper knew the following facts: (1) An automobile accident had occurred in Rio Blanco County on January 7, 1981; and, as a result, several persons had been killed and others were severely injured. (2) The car carrying the defendant and Miller was on the wrong side of the road at the time of the collision. (3) The defendant stated to the officer that he was "too drunk to drive" and that Miller was the driver. (4) Miller reported to the officer that the defendant was driving the vehicle. (5) The officer noted the presence of alcohol on the breath of both the defendant and Miller.

■ The only question concerning probable cause raised by these facts is whether the officer had probable cause to believe the defendant was the driver of the vehicle. We conclude that under the circumstances of this case where two persons each claimed the other was the driver of a vehicle involved in a suspected criminal offense, the officer had reasonable grounds to obtain a blood sample from each suspect. *See People v. Hearty*, 644 P.2d 302 (Colo. 1982). We hold that the officer had probable cause to arrest the defendant and to obtain a blood specimen without the consent of the defendant.[4] The fact that the search preceded the arrest rather than vice versa is not controlling because the fruits of the search were not necessary to support probable cause to arrest. *See Rawlings v. Kentucky*, 448 U.S. 98, 100 S.Ct. 2556, 65 L.Ed.2d 633 (1980).

## IV.

The record establishes the following facts pertinent to the defendant's chain of

---

3. In his opening brief, the defendant "argues that the blood that was taken from him on the evening of January 7, 1981, was taken *without his consent* ... and illegally." (Emphasis added.) The People responded to the defendant's claim in their answer brief by stating, "[t]his contention is without merit." This is the extent of the parties' argument relating to the "consent" issue made in this appeal. However, the record reveals that the defendant may well have consented to the extraction of his blood. The defendant testified at the hearing on the motion to suppress that he did not "knowingly consent to the blood being taken from" him. At trial, however, Trooper Chrysler stated that the defendant signed a form contained in the blood specimen kit. Ms. Ziegler, the medical technologist who withdrew the blood sample, testified that the defendant took "the test voluntarily" and "signed a form" indicating his consent. Moreover, Ms. Ziegler also testified that she was under the impression that she could not take blood from a person without his consent, unless the patient was comatose. She stated that Trooper Chrysler did not tell the defendant he could refuse to take the test. Rather, he told the defendant the form granted Ms. Ziegler permission to withdraw a blood sample. The defendant took the form and signed it. The form was admitted into evidence. Our evaluation of the consent issue is hampered by the parties' election not to brief the issue and the People's failure to supplement the record on appeal to include the exhibits, including the form signed by the defendant. Therefore, we will not further address the issue of consent.

4. The implied consent statute, section 42–4–1202, 17 C.R.S. (1973 & 1983 Supp.), is inapplicable in this case because of the probable commission of a felony. *See, e.g., People v. Myers*, 198 Colo. 295, 599 P.2d 891 (1979); *People v. Brown*, 174 Colo. 513, 485 P.2d 500 (1971); *People v. Sanchez*, 173 Colo. 188, 476 P.2d 980 (1970).

custody argument. Trooper Chrysler directed Ruth Ziegler, a medical technologist, to obtain blood specimens from the defendant and Miller. Chrysler watched Ziegler draw the blood samples from both men. After Ziegler drew the blood from the defendant, she placed one-half of the sample in each of two vials which she gave to Chrysler who sealed them. Chrysler placed the vials in the Styrofoam container and put the container in the cardboard mailing carton. He gave the box to Sergeant King of the Colorado State Patrol who sealed it and mailed it to Kier Laboratories in Denver.[5] The identical procedure was followed with regard to the specimen of Miller's blood. Dr. Kier received the box containing the defendant's blood specimens, opened it, removed the vials, unsealed one of them, and performed a chemical analysis to determine the blood-alcohol content. The other vial was placed in storage.

At trial, Chrysler, Ziegler, and Kier were called and testified as to their respective roles in the chain of custody. Sergeant King, for some reason, was not called as a witness by the prosecution. Thus, the defendant claims that the chain of evidence was incomplete and the exhibits and test results should not have been admitted into evidence. We disagree.

■ The general rule is that the proponent of real evidence must establish a chain of custody which insures that the evidence offered is in the same condition as when it was obtained. *People v. Atencio*, 187 Colo. 226, 529 P.2d 636 (1974). *See also* CRE 901. "[T]he burden is upon the party offering the evidence to show to the satisfaction of the court, with reasonable certainty, that there was no alteration of or tampering with the evidence." *People v. Smith*, 182 Colo. 228, 232, 512 P.2d 269, 271 (1973). The chain of custody of any blood sample must be established, and failure to do so may be excused only where circumstances provide reasonable assurances of identity

and unchanged condition of the sample. *Amaro v. City of New York*, 40 N.Y.2d 30, 386 N.Y.S.2d 19, 351 N.E.2d 665 (1976). However, "[e]ven where there is some confusion about the chain of custody, so long as the evidence was accounted for at all times, the evidence is admissible." *People v. Atencio*, 193 Colo. 184, 187, 565 P.2d 921, 923 (1977). Here, the prosecution's evidence satisfactorily demonstrates that the sample of the defendant's blood was accounted for at all times. Moreover, the defendant offered no evidence that anyone had tampered with the defendant's blood sample.

■ We hold that in the absence of any evidence of tampering or lack of authentication, the proponent of evidence relating to the results of a blood-alcohol test and the supporting exhibits is not required to call each witness who may have handled the exhibit. *See People v. Brake*, 191 Colo. 390, 553 P.2d 763 (1976) (no witness was able to say who removed the envelope from the evidence custodian's office and took it to the forensic laboratory); *People v. Atencio*, 187 Colo. 226, 529 P.2d 636 (1974) (evidence custodian was not called to testify to the receipt and delivery of an evidence envelope in which a balloon containing heroin had been placed); *State v. Crawford*, 223 Kan. 127, 573 P.2d 982 (1977), *cert. denied*, 435 U.S. 930, 98 S.Ct. 1504, 55 L.Ed.2d 527 (1977) ("rape kit" was not inadmissible because the prosecution was unable to locate the nurse who took the exhibit from the examination room to a waiting messenger in the hallway outside); *State v. Fornier*, 103 N.H. 152, 167 A.2d 56 (1961) (a blood sample was sufficiently identified even though there was no testimony as to how the container and tubes were removed from the refrigerator in the police headquarters to the state laboratory). *But see Commonwealth v. Ayers*, 203 Pa.Super. 116, 198 A.2d 633 (1964) (all testimony concerning an Intoximeter test was stricken by the trial court when it was determined

---

**5.** We note here that Chrysler testified to King's full participation in the chain of custody without objection.

that the result of the test which had been delivered for analysis to the state crime laboratory had been in the possession of and mailed by a police officer who was unavailable to testify).

 There is no evidence in the record which suggests that the sample tested by Dr. Kier was not the sample drawn from the defendant on January 7, 1981. "When it is only speculation that there was tampering, it is proper to admit the evidence and let the jury determine its weight." *Smith*, 182 Colo. at 232, 512 P.2d at 271; *accord People v. Gomez*, 632 P.2d 586 (Colo.1981); *People v. Fite*, 627 P.2d 761 (Colo.1981). We conclude that the trial court properly admitted the exhibits and the test results.

The judgment of the trial court is affirmed.