## STATE OF CONNECTICUT *v.* JAMES KRISTY
## (3856)

BORDEN, DALY and BIELUCH, Js.

Argued January 5—decision released July 7, 1987

*Timothy H. Everett,* with whom, on the brief, were *Matthew Stokely* and *Bradley Larson,* certified legal interns, for the appellant (defendant).

*James G. Clark,* assistant state's attorney, with whom, on the brief, were *Irving Smirnoff,* assistant state's attorney, and *Robert B. Clark,* certified legal intern, for the appellee (state).

DALY, J. The defendant appeals from the judgment of conviction, after a jury trial, of two counts of misconduct with a motor vehicle in violation of General Statutes § 53a-57.[1] The defendant had been charged by information with two counts of manslaughter in the second degree with a motor vehicle while intoxicated. The defendant claims that the trial court erred (1) in denying his motion to suppress, thereby admitting into evidence results of tests performed on blood and urine samples taken from him when not under arrest, and (2) in improperly charging the jury that misconduct with a motor vehicle is a lesser included offense of manslaughter in the second degree with a motor vehicle while intoxicated, a violation of General Statutes § 53a-56b (a).[2] We find error on the second claim.

The jury could reasonably have found the following facts: On December 21, 1983, at approximately 9:45

---

[1] General Statutes § 53a-57 (a) provides: "A person is guilty of misconduct with a motor vehicle when, with criminal negligence in the operation of a motor vehicle, he causes the death of another person."

[2] At the time of the information in this case General Statutes (Rev. to 1983) § 53a-56b provided in pertinent part: "(a) A person is guilty of manslaughter in the second degree with a motor vehicle while intoxicated when, in consequence of his intoxication while operating a motor vehicle, he causes the death of another person. For the purposes of this section, 'intoxication' shall include intoxication by alcohol or by drug or both."

General Statutes § 53a-56b (a) now provides: "A person is guilty of manslaughter in the second degree with a motor vehicle when, while operating a motor vehicle under the influence of intoxicating liquor or any drug or both, he causes the death of another person as a consequence of the effect of such liquor or drug."

p.m., the defendant was operating his motor vehicle and carrying four passengers on the Boston Post Road in Milford. An eyewitness observed the car changing lanes two or three times, moving erratically and reaching a speed of approximately sixty miles per hour in a forty mile per hour zone. One of the backseat passengers was observed holding a can of beer. The car was seen attempting to make a sudden right turn onto West Street, at a speed later determined to be 61.6 miles per hour. The car failed to negotiate the turn and slid into a telephone pole and guard rail. Two passengers died as a result of the crash. All five men in the car had been drinking beer from a case which had been purchased earlier in the evening. Beer cans were found in and around the car immediately following the collision.

The defendant was taken to the Milford Hospital. A blood sample (hereinafter blood sample one) was taken by hospital personnel at approximately 10:25 p.m. as a routine hospital procedure. The defendant signed a consent form releasing his hospital records to the police, including the test results from blood sample one. That test indicated a blood alcohol level of .20 percent by weight in the defendant's blood. A second blood sample (hereinafter blood sample two) was taken from the defendant at police request at 11:05 p.m. and turned over to the police. Blood sample two indicated a blood alcohol content of .14 percent. At 12:30 a.m. a urine sample was taken which revealed a blood alcohol level of .12 percent by weight. This sample was also requested by and turned over to the police. The defendant was arrested some four months later, on May 5, 1984.

The defendant filed a motion to suppress and objected at trial to the admission of the test results from *both* blood samples and the urine sample, claiming that he had neither consented to their taking nor that he was

under arrest at the time they were taken. The trial court admitted all the test results. The court concluded that the defendant had consented to the release of his hospital records including the test results from blood sample one, and that consent was unnecessary for the police-obtained samples. The court further stated that "there was a sufficient basis in the fact situation for the belief that a blood sample would produce evidence."

At the state's request, the trial court charged the jury as to the lesser offense of misconduct with a motor vehicle, and at the defendant's request also instructed as to negligent homicide in violation of General Statutes § 14-222a.[3]

I

The first issue raised by the defendant is whether the results of the chemical analyses of his blood and urine introduced into evidence should have been suppressed as the products of an unconstitutional search and seizure under the fourth, fifth, sixth and fourteenth amendments to the United States constitution and under article first, § 8 of the Connecticut constitution.

The defendant relies primarily on *Schmerber* v. *California*, 384 U.S. 757, 86 S. Ct. 1826, 16 L. Ed. 2d 908 (1966), and *State* v. *Towry*, 26 Conn. Sup. 35, 210 A.2d 455 (1965). In *Schmerber*, the Supreme Court held that compulsory administration of a blood test plainly implicates the fourth amendment concepts of search and seizure. Our Supreme Court has also stated that the taking of a blood sample constitutes a search and seizure within the meaning of the fourth amendment to the federal constitution. *State* v. *Acquin*, 177 Conn.

---

[3] General Statutes § 14-222a provides: "Any person who, in consequence of the negligent operation of a motor vehicle, causes the death of another person shall be fined not more than one thousand dollars or imprisoned not more than six months or both."

352, 354, 416 A.2d 1209 (1979). The question that remains, therefore, is whether the search and seizure was reasonable.

The defendant's reliance on *Schmerber* is premised on the fact that the defendant in that case had been arrested prior to a blood sampling, while in the present case the defendant had not yet been arrested. The *Schmerber* court reasoned that probable cause to arrest the defendant for driving while intoxicated had been present, and that the arresting officer could reasonably have believed that the delay necessary to obtain a search warrant would imperil the existence of the evidence sought, since the alcohol content of blood begins to diminish shortly after drinking stops. The court stated that there was not enough time to locate a magistrate and to obtain a warrant without losing the evidence. The court was also satisfied that the hospital procedure used to extract the blood was reasonable. On the basis of three considerations, namely the existence of probable cause, the evanescent nature of the evidence and the reasonableness of the intrusion, the court held that there had been no violation of the petitioner's right to be free from *unreasonable* searches and seizures. *Schmerber* v. *California,* supra, 767.

The defendant argues that the holding in *Schmerber* is limited by the fact that the defendant had been arrested prior to the taking of the blood sample.

The defendant also relies on *State* v. *Towry,* supra. In that case, the Appellate Division of the Circuit Court held that a state court must apply federal constitutional standards, and therefore concluded that a blood sample taken from an unconscious defendant thirteen days before his arrest was the result of an unreasonable, and therefore unconstitutional search and seizure not incident to a lawful arrest. It should be noted that *Towry* predates *Schmerber*. Moreover, as a constitutional

intermediate appellate court we are not bound by the precedent of the statutory Appellate Division of the Circuit Court. *State* v. *Kluttz,* 9 Conn. App. 686, 694 n.8, 521 A.2d 178 (1987); *State* v. *Hyatt,* 9 Conn. App. 426, 430, 519 A.2d 612 (1987).

There are three sampling episodes in the present case. Blood sample one was taken as a routine hospital procedure, while blood sample two and the urine sample were taken at the request of the police. In ruling on the motion to suppress, the trial court held that the defendant consented to the release of his hospital records, including the test results of blood sample one. In order to introduce evidence obtained after consent has been given, the state must establish that consent was freely and voluntarily given. *Bumper* v. *North Carolina,* 391 U.S. 543, 548, 88 S. Ct. 1788, 20 L. Ed. 2d 797 (1968). Whether that consent was so given is a question of fact to be determined by the trial court from the totality of the circumstances. *State* v. *Torres,* 197 Conn. 620, 627, 500 A.2d 1299 (1985).

In this case, the court found that there was no showing that the defendant was under any duress or was incapable of acting in his own interests. The trial court also had before it a consent form signed by the defendant which released his hospital records.

The defendant's brother testified that he did not see the defendant sign the form since he was not in the room when it was signed, but the defendant's sister testified that the brother did in fact witness the defendant's signature. Further, a police officer testified that the defendant stated that his signing of the consent form was a free and voluntary act. In his motion to suppress, the defendant claimed he had not consented to the release of his hospital records. On appeal, however, the defendant has not specified any basis upon which he challenges his consent.

When the totality of the circumstances is considered, the trial court's finding that the defendant voluntarily consented to the release of the hospital records, including blood sample one, is not clearly erroneous.

This leaves for our consideration the results of blood sample two and the urine sample. The defendant asserts that in order for the holding in *Schmerber* to permit a blood test without a search warrant, the party must have been arrested prior to the extraction of blood. There is a split in authority as to whether an arrest prior to the extraction of blood is required.

Some courts which have confronted the issue have interpreted *Schmerber* to require an arrest before a blood sample can be taken. They include *United States* v. *Harvey,* 701 F.2d 800 (9th Cir. 1983); *Layland* v. *State,* 535 P.2d 1043 (Alaska 1975); *State* v. *Wetherell,* 82 Wash. 2d 865, 514 P.2d 1069 (1973); and *People* v. *Superior Court of Kern County,* 6 Cal. 3d 757, 100 Cal. Rptr. 281, 493 P.2d 1145 (1972). Others have read *Schmerber* to require only probable cause to believe that a crime had been committed and probable cause to believe that evidence of the crime in question will be found, and that an immediate warrantless search is necessary in order to prevent the destruction or loss of evidence. See *People* v. *Morse,* 68 Mich. App. 150, 242 N.W.2d 47 (1976); see also 2 W. LaFave, Search and Seizure § 5.4 (b), p. 521–24 (1987), and cases cited therein.

The reasoning used in a case subsequent to *Schmerber; Cupp* v. *Murphy,* 412 U.S. 291, 93 S. Ct. 2000, 36 L. Ed. 2d 900 (1973); provides a sturdy framework for our analysis of this issue. In *Cupp,* the United States Supreme Court held that exigent circumstances can justify a search based on probable cause when destruction of the evidence is imminent and the intrusion is minimal. In *Cupp,* the defendant went to the

police station voluntarily after his wife had been strangled. He was detained for a brief period and asked to consent to having his fingernails scraped. He refused. Nonetheless, the police, noticing what they thought was a spot of blood on the defendant's finger, took a scraping from beneath his nails which contained skin, blood-cells and fabric from the victim's clothing. This search was done without a warrant and before the defendant was arrested. In fact, although the police had probable cause to arrest the defendant at the time of the scraping, they did not do so until a month later. The court held that the search passed constitutional muster for three reasons: (1) the existence of probable cause for arrest; (2) the limited nature of the search; and (3) the ephemeral nature of the evidence. Thus, the *Cupp* court did not require an actual arrest prior to the search as long as probable cause existed for an arrest.

We do not believe that either the *Schmerber* decision or the *Cupp* decision suggests that a formal arrest is an absolute prerequisite to a blood test for alcohol absent consent, and we are unwilling to impose such a requirement. Accord *Galvan* v. *State,* 98 Nev. 550, 655 P.2d 155 (1982); *State* v. *Dewey,* 272 N.W.2d 355 (Minn. 1978). Our Supreme Court has recently stated that a person has no constitutional right to withhold nontestimonial evidence when the state's demand is supported by probable cause. *Buckley* v. *Muzio,* 200 Conn. 1, 8, 509 A.2d 489 (1986).

In this case, the defendant has never claimed that there was a lack of probable cause to arrest him. Indeed, the evidence is clearly to the contrary. *Schmerber* itself, the primary case upon which the defendant relies, highlights the short life of alcohol in the bloodstream upon cessation of drinking.

Thus, we conclude that the trial court did not err in denying the defendant's motion to suppress, thereby

allowing the admission at trial of the results of both blood samples and the urine sample.

## II

The defendant also challenges his conviction of the offense of misconduct with a motor vehicle under General Statutes § 53a-57. He claims that misconduct with a motor vehicle is not a lesser included offense of manslaughter in the second degree with a motor vehicle while intoxicated; General Statutes § 53a-56b; with which he was originally charged.

If this assertion is correct, the defendant was convicted of an offense for which he was not on trial. In such a case, the conviction would be improper and the judgment could not stand. Our Supreme Court has held that a defendant convicted of an offense of which he was never given notice has been deprived of a fundamental constitutional right and of a fair trial. *State* v. *Martin,* 187 Conn. 216, 218–19, 445 A.2d 585 (1982); *State* v. *Rodriguez,* 180 Conn. 382, 399 n.10, 429 A.2d 919 (1980); see U.S. Const., amend. VI; Conn. Const., art. I, § 8. Thus, notwithstanding the fact that this claim of error was not raised at the trial, we will review it under *State* v. *Evans,* 165 Conn. 61, 327 A.2d 576 (1973).

General Statutes (Rev. to 1983) § 53a-56b (a), in effect at the time of the filing of the information in this case provided: "A person is guilty of manslaughter in the second degree with a motor vehicle while intoxicated when, in consequence of his intoxication while operating a motor vehicle, he causes the death of another person. For the purposes of this section, 'intoxication' shall include intoxication by alcohol or by drug or by both." The defendant, therefore, had notice to defend against this charge and any lesser offenses included within this crime. *State* v. *Jacobowitz,* 182 Conn. 585, 591, 438 A.2d 792 (1981), citing *Paterno* v.

*Lyons,* 334 U.S. 314, 320–21, 68 S. Ct. 1044, 92 L. Ed. 1409 (1948). Manslaughter in the second degree with a motor vehicle while intoxicated does not contain a mental state element. Its elements are: (1) operation of a motor vehicle; (2) while intoxicated; and (3) which causes the death of another person. Thus, proof of a mental state was not necessary to support a conviction under this statute. The essential questions for the trier of fact on this charge, then, were whether the defendant was intoxicated by alcohol or by drug while operating a motor vehicle and whether the death of another person was a consequence of that intoxication.

The crime for which the defendant was convicted, misconduct with a motor vehicle, provides that a person is guilty of the offense "when, with criminal negligence in the operation of a motor vehicle, he causes the death of another person." General Statutes § 53a-57. Criminal negligence is defined in General Statutes § 53a-3 (14): "A person acts with 'criminal negligence' with respect to a result or to a circumstance described by a statute defining an offense when he *fails to perceive* a substantial and unjustifiable risk that such result will occur or that such circumstance exists. The risk must be of such nature and degree that the *failure to perceive* it constitutes a gross deviation from the standard of care that a reasonable person would observe in the situation . . . . " (Emphasis added.) Thus, conviction of misconduct with a motor vehicle requires proof of the mental state involved in criminal negligence which is not an element of manslaughter.

In Connecticut, there is a four prong test to determine when a lesser included offense instruction should be given.[4] The second prong of that doctrine is rele-

[4] "A defendant is entitled to an instruction on a lesser offense if, and only if, the following conditions are met: (1) an appropriate instruction is

vant here. "[I]f it is not possible to commit the crime charged in the information or bill of particulars without first having committed [the] lesser crime," then the defendant can be convicted of the lesser crime. *State v. Whistnant,* 179 Conn. 576, 584, 427 A.2d 414 (1980). All of the elements of misconduct with a motor vehicle, i.e. criminal negligence, need not be proven when proving manslaughter in the second degree with a motor vehicle while intoxicated. It is possible to operate a motor vehicle while intoxicated, resulting in the death of another, *without failing to perceive* the risk involved in driving in that condition. For example, one can be intoxicated, and also perceive the risks involved in driving in that condition, and yet ignore those risks, and then, because of the intoxication, be unable to maintain sufficient control of the motor vehicle to avoid a collision.[5] We conclude that the defendant was convicted of a crime with which he was not charged, and which was not a lesser included offense of the crime charged.[6]

---

requested by either the state or the defendant; (2) it is not possible to commit the greater offense, in the manner described in the information or bill of particulars, without having first committed the lesser; (3) there is some evidence, introduced by either the state or the defendant, or by a combination of their proofs, which justifies conviction of the lesser offense; and (4) the proof on the element or elements which differentiate the lesser offense from the offense charged is sufficiently in dispute to permit the jury consistently to find the defendant innocent of the greater offense but guilty of the lesser." *State* v. *Whistnant,* 179 Conn. 576, 588, 427 A.2d 414 (1980).

[5] Such behavior is "reckless" as defined in General Statutes § 53a-3 (13) which provides: "A person acts 'recklessly' with respect to a result or to a circumstance described by a statute defining an offense when he is *aware of and consciously disregards* a substantial and unjustifiable risk that such result will occur or that such circumstance exists. The risk must be of such nature and degree that disregarding it constitutes a gross deviation from the standard of conduct that a reasonable person would observe in the situation." (Emphasis added.)

[6] We note that there is no double jeopardy barrier to the filing of a *new* information charging misconduct with a motor vehicle, if filed within the statutory limitation period. Federal courts have held that when a defendant is tried for a crime which includes both greater and lesser offenses, conviction of the lesser bars retrial on the greater, and vice-versa. *Harris*

We therefore conclude that the defendant was deprived of a fair trial. *State* v. *Rodriguez*, supra. It is clear, however, that there can be no review of the judgment of acquittal on the manslaughter in the second degree while intoxicated charge even though errors may underlie that judgment. *State* v. *Jacobowitz*, supra, 594. Nor can we order a new trial on the misconduct with a motor vehicle offense under the present information since it does not charge that offense.[7] *State* v. *Martin,* supra, 222–23.

v. *Oklahoma,* 433 U.S. 682, 97 S. Ct. 2912, 53 L. Ed. 2d 1054 (1977); *Brown* v. *Ohio,* 432 U.S. 161, 168–69, 97 S. Ct. 2221, 53 L. Ed. 2d 187 (1977). Before a double jeopardy barrier arises, however, the two offenses must not only arise out of the same act or transaction but must be substantially the same. *State* v. *Goldson,* 178 Conn. 422, 424, 423 A.2d 114 (1979). The following test for the latter requirement was approved by the *Goldson* court as set out in *Blockburger* v. *United States,* 284 U.S. 299, 304, 52 S. Ct. 180, 76 L. Ed. 306 (1932): " 'The applicable rule is that where the same act or transaction constitutes a violation of two distinct statutory provisions, the test to be applied to determine whether there are two offenses or only one, is whether each provision requires proof of a fact which the other does not . . . .' "

Applying the *Blockburger* test to this case, it is possible to commit manslaughter in the second degree while intoxicated, as charged, without committing misconduct with a motor vehicle; it is also possible to satisfy the criminal negligence requirement for misconduct with a motor vehicle without satisfying the intoxication requirement for the higher offense. Because the offenses are not substantially the same for double jeopardy purposes, there would be no constitutional impediment to a new trial on misconduct with a motor vehicle, an offense for which the defendant has never been charged and which was not included in the offense for which he was tried. See *State* v. *Martin,* 187 Conn. 216, 223 n.6, 445 A.2d 585 (1982).

[7] We note, in passing, that the analysis of our Supreme Court in *State* v. *Rodriguez,* 180 Conn. 382, 407, 429 A.2d 919 (1980), is inapplicable here. In that case, the court concluded that "an offense that would be a lesser included offense but for its requirement of a less culpable state of mind than that required for the greater, will be deemed a lesser included offense." In the present case, however, the greater offense, manslaughter in the second degree with a motor vehicle while intoxicated, does not contain *any* mental state element. In *Rodriguez,* both the greater and lesser offenses required mental states which were on the same continuum, differentiated only by the level of culpability. Here, the charged offense was not on the mental state continuum at all. Thus, we cannot deem misconduct with a motor vehicle a lesser included offense of manslaughter in the second degree with a motor vehicle while intoxicated.

There is error, the judgment is set aside and the case is remanded with direction to render judgment that the defendant is not guilty of manslaughter in the second degree with a motor vehicle while intoxicated and ordering that he be discharged.

In this opinion the other judges concurred.