STATE OF CONNECTICUT *v.* GARY M. TAYLOR
(4557)

DUPONT, C. J., HULL and DALY, Js.

Argued May 13—decision released September 22, 1987

*Hubert J. Santos,* for the appellant (defendant).

*Michael E. O'Hare,* assistant state's attorney, with whom, on the brief, was *Terrence A. Sullivan,* state's attorney, for the appellee (state).

DUPONT, C. J. The defendant entered a plea of nolo contendere to the charge of operating a motor vehicle while under the influence of intoxicating liquor, in violation of General Statutes § 14-227a (a). As provided in General Statutes § 54-94a,[1] the defendant appeals from the trial court's denial of his amended motion to suppress two breathalyzer tests. The purpose of the defendant's plea of nolo contendere, according to his counsel at the time the plea was entered, was to contest on appeal "those issues raised by our Motion to Suppress and our Memorandum in support thereof."

The parties stipulated to certain relevant facts. In the early morning of February 15, 1985, the defendant was operating a motor vehicle on a state highway.

---

[1] General Statutes § 54-94a provides: "When a defendant, prior to the commencement of trial, enters a plea of nolo contendere conditional on the right to take an appeal from the court's denial of the defendant's motion to suppress evidence based on an unreasonable search or seizure or motion . to dismiss, the defendant after the imposition of sentence may file an appeal within the time prescribed by law. The issue to be considered in such an appeal shall be limited to whether it was proper for the court to have denied the motion to suppress or the motion to dismiss. A plea of nolo contendere by a defendant under this section shall not constitute a waiver by the defendant of nonjurisdictional defects in the criminal prosecution."

A state trooper who observed the defendant's opera-
tion of the motor vehicle stopped him because the
trooper believed the defendant's car was being oper-
ated erratically. The trooper administered a field test
for sobriety, concluded that the defendant had failed
it, and then arrested the defendant for operating his
vehicle while under the influence of intoxicating liquor.
He advised the defendant of his constitutional rights
in accord with the holding of *Miranda* v. *Arizona,* 384
U.S. 436, 86 S. Ct. 1602, 16 L. Ed. 2d 694 (1966), and
as required by General Statutes § 14-227b (b).[2]

The officer then requested that the defendant con-
sent to a blood, breath or urine test and advised him,
pursuant to § 14-227b (b), that if he did not submit to
the test his motor vehicle operator's license would be
suspended for six months and that evidence of such
refusal would be admissible and might be used against
him in any criminal prosecution. As a result of the
trooper's warning concerning loss of license for fail-
ure to take the test, the defendant agreed to submit
to the breath test because he feared the loss of his

---

[2] General Statutes § 14-227b (b) provides: "If any such person, having
been placed under arrest for operating a motor vehicle while under the influ-
ence of intoxicating liquor or any drug or both or while his ability to oper-
ate such motor vehicle is impaired by the consumption of intoxicating liquor,
and thereafter, after being apprised of his constitutional rights, having been
requested to submit to a blood, breath or urine test at the option of the
police officer, having been afforded a reasonable opportunity to telephone
an attorney prior to the performance of such test and having been informed
that his license or nonresident operating privilege will be suspended in
accordance with the provisions of subsection (d), (e) or (f) of this section
if he refuses to submit to such test and that evidence of such refusal shall
be admissible in accordance with subsection (f) of section 14-227a and may
be used against him in any criminal prosecution, refuses to submit to the
designated test, the test shall not be given; provided, if the person refuses
or is unable to submit to a blood test, the police officer shall designate the
breath or urine test as the test to be taken. The police officer shall make
a notation upon the records of the police department that he informed the
person that his license or nonresident operating privilege would be sus-
pended if he refused to submit to such test."

license, and for no other reason. After the first test was administered, the defendant requested a second test. The results of both tests were probative of the fact that the defendant was driving while under the influence of intoxicating liquor.[3]

The defendant filed a pretrial motion to suppress the results of the two breathalyzer tests. At the hearing on the motion, the defendant claimed that the results of the tests were inadmissible on two grounds.[4] The first ground was that the defendant's consent to the tests after being warned of the consequences of refusal did not constitute the voluntary consent to a search required by the fourth amendment to the United States constitution; the second ground was that § 14-227b (b) is unconstitutional because it violates both the United

---

[3] The first breath test resulted in a reading of .185, and the second, in a reading of .159.

[4] The defendant's amended motion to suppress, the denial of which he appeals reads as follows: "Pursuant to the Fourth, Fifth, Sixth and Fourteenth Amendments to the Constitution of the United States, Article 1, Section 8 and 20 of the Connecticut Constitution and Section 820, et. seq. of the Practice Book, the Defendant, GARY M. TAYLOR, moves to suppress as evidence against him the results of two chemical tests administered to the Defendant by an officer of the Connecticut State Police for the reason that said test results were the product of an unreasonable search and seizure in that:

"1. Defendant did not voluntarily consent to the taking of said test for the reason that Defendant agreed to take said tests only after he was advised by a Connecticut State Trooper that his failure to submit to the tests would result in the suspension of his licensed operating privilege in the State of Connecticut and that said refusal to submit to the test would be admissible and could be used against him in any criminal prosecution.

"2. Defendant's agreement to take said tests was the result of the application of an unconstitutional statute to wit: Section 14-227b (b)'s requirement that a person's licensed operating privilege in the State of Connecticut be suspended for failure to submit to a test and that said refusal to submit to a test is admissible and can be used against a person in any criminal prosecution violates the Fourth, Fifth, Sixth and Fourteenth Amendments to the Constitution of the United States, Article first, Section 8 of the Connecticut Constitution and the laws of the State of Connecticut.

"The parties have simultaneously filed with this Motion, a Stipulation regarding the facts as they relate to the issues raised to the instant motion."

States and the Connecticut constitutions. The second claim, insofar as it relates to the state constitution, has not been briefed by the defendant and is not considered by this court.

On appeal, the defendant claims that the trial court erred in failing to grant his motion to suppress because his consent to the tests was not voluntary as is required by the fourth amendment. He further argues, for the first time, that § 14-227a (c) affords greater protection to a defendant than the fourth amendment to the United States constitution. The latter argument was not made to the trial court and will not be considered by this court.[5]

The issue on appeal, thus, is whether the motion to suppress was erroneously denied because the evidence of the breathalyzer test results was not acquired with the voluntary consent required for a lawful search in accord with fourth amendment principles. See *Schneckloth* v. *Bustamonte,* 412 U.S. 218, 93 S. Ct. 2041, 36 L. Ed. 2d 854 (1973). Although the defendant does not expressly argue in his brief that § 14-227b (b) is uncon-

[5] The following excerpts of the challenge raised by the defendant's attorney at the hearing on his motion to suppress reveals the scope of the reservation sought pursuant to General Statutes § 54-94a: "[I] would still submit that if, in fact, consent is an element that must be proven, and consent is waived in a coercive way, then the fourth amendment right or for that matter the fifth amendment right might be implicated . . . ."

"But I think it's a violation of the fourth amendment in that it constitutes a seizure with out consent."

The defendant thus did not at that time claim that the statute under which he was charged gave him more protection than the fourth amendment because General Statutes § 14-227a (c) (1) requires as a condition precedent to admissibility that the defendant has "consented to the taking of the test upon which such analysis is made . . . ." The defendant was required to raise his claims distinctly at trial. Practice Book § 4185. " 'The requirement that [a] claim be raised "distinctly" means that it must be "so stated as to bring to the attention of the court the *precise* matter on which its decision is being asked." (Emphasis added.) *Woodruff* v. *Butler,* 75 Conn. 679, 682, 55 A. 167 (1903).' *State* v. *Carter,* 198 Conn. 386, 396, 503 A.2d 576 (1986)." *State* v. *Sullivan,* 11 Conn. App. 80, 101, 525 A.2d 1353 (1987).

stitutional, he claims that because he took the tests for the sole reason that, under the statute, he would lose his driver's license if he did not, his consent to the test was not voluntary and, therefore, violative of the fourth amendment. He argues, in essence, that the consent implied in § 14-227b (b) is prohibited by the fourth amendment because it is obtained through coercion and the threat of loss of a driver's license. On review, we must therefore determine whether the taking of the tests was an "unreasonable search and seizure" prohibited by the fourth amendment, and, whether that protection can only be overcome by either the defendant's voluntary consent, unfettered by § 14-227b (b), or a warrant authorizing the search.

It is beyond dispute that searches conducted without a warrant are per se unreasonable under the fourth amendment, subject only to a few specifically established and well delineated exceptions. *Coolidge* v. *New Hampshire,* 403 U.S. 443, 454–55, 91 S. Ct. 2022, 29 L. Ed. 2d 564, reh. denied, 404 U.S. 874, 92 S. Ct. 26, 30 L. Ed. 2d 120 (1971). Consent is one of these exceptions. *State* v. *Harris,* 10 Conn. App. 217, 223–24, 522 A.2d 323 (1987). Exigent circumstances is another. *Schmerber* v. *California,* 384 U.S. 757, 86 S. Ct. 1826, 16 L. Ed. 2d 908 (1966).

The defendant claims that the searches were not lawful because they did not fall under the consent exception to the fourth amendment prohibition against unreasonable searches and seizures. The defendant makes no claim of impropriety with respect to the actions of the arresting officer or the testing procedure itself. The record shows that the arresting officer followed the steps mandated by § 14-227b (b) with exactitude, in that the defendant was apprised of his constitutional rights, informed of his right to contact an attorney prior to the performance of the test, requested to submit to the test, and informed that his

license would be suspended if he refused to submit to such test and that evidence of such refusal would be admissible and might be used against him in any criminal prosecution.[6]

The defendant disingenuously argues that his consent was not free and voluntary, notwithstanding the fact that it was obtained by following, to the letter, the mandate of § 14-227b (b). Connecticut "has declined to authorize its police officers to administer a blood-alcohol test against the suspect's will. Rather, to avoid violent confrontations, the . . . statute permits a suspect to refuse the test, and indeed requires police officers to inform the suspect of his right to refuse. . . . This permission is not without a price, however. [Connecticut] law authorizes the [commissioner of motor vehicles], after providing the person who has refused the test an opportunity for a hearing, to revoke for [six months] . . . the person's license to drive . . . . Such a penalty . . . is unquestionably legitimate, assuming appropriate procedural protections. See *Mackey* v. *Montrym*, [443 U.S. 1, 17–19, 99 S. Ct. 2612, 61 L. Ed. 2d 321 (1979)]." (Citations omitted.) *South Dakota* v. *Neville*, 459 U.S. 553, 559–60, 103 S. Ct. 916, 74 L. Ed. 2d 748 (1983). Section 14-227b (b) contains appropriate procedural protections. See *Buckley* v. *Muzio*, 200 Conn. 1, 8, 509 A.2d 489 (1986); *Commissioner* v. *Funk*, Pa. Super. 233, 385 A.2d 995 (1978).

The defendant's dilemma was that if he consented to the search, the analysis would almost certainly precipitate a conviction, but that if he did not consent to the search, he would suffer a loss of license. Such a choice does not vitiate apparent consent if no force, deception or coercion is used or threatened. See *United*

---

[6] Under General Statutes § 14-227b (a), "any person who operates a motor vehicle in this state is deemed to have given his consent to a chemical analysis of his blood, breath or urine . . . . " The defendant has not attacked the constitutionality of that statute.

*States* v. *Piet,* 498 F.2d 178, 182 (7th Cir. 1974); *Gorman* v. *United States,* 380 F.2d 158, 165 (1st Cir. 1967). Nor does the choice vitiate the implied consent of § 14-227b (a). See *Commissioner* v. *Funk,* supra.

The defendant himself produced the situation which made it difficult for him to avoid giving his apparent or implied consent. See *Gorman* v. *United States,* supra. The defendant chose to engage in a regulated activity, that of driving a motor vehicle, and thereby became subject to General Statutes § 14-227b. See *Volck* v. *Muzio,* 204 Conn. 507, 520–21, 529 A.2d 177 (1987).

In the case at bar, as in *Schmerber* v. *California,* supra, the defendant was lawfully arrested for driving while under the influence of intoxicating liquor. He has not challenged the propriety of that arrest. The defendant's erratic driving and failure of the field sobriety test were the factual bases of the officer's inference that the breath test was likely to reveal evidence of the offense. It was equally reasonable for the officer to infer that such evidence might disappear, by the dissipation of the liquor over time, absent an immediate search.

We have recently held, in accord with *Schmerber* v. *California,* supra, and *Cupp* v. *Murphy,* 412 U.S. 291, 93 S. Ct. 2000, 36 L. Ed. 2d 900 (1973); that blood alcohol tests are reasonable even when the defendant has not yet been formally arrested. *State* v. *Kristy,* 11 Conn. App. 473, 528 A.2d 390 (1987). The tests there were permissible because there was probable cause to arrest the defendant, the search was minimally intrusive, and the evidence of the crime was subject to rapid dissipation. *State* v. *Kristy,* supra, 477. In this case the defendant had already been formally arrested, and as in *Kristy,* the existence of probable cause to arrest is undisputed. The breath test administered in this case was even less intrusive than the blood sampling of *Kristy.* The evidence which both breathalyzer and blood

tests seek to secure is that of blood alcohol content, which "begins to diminish shortly after drinking stops, as the body functions to eliminate it from the system." *Schmerber* v. *California,* supra, 770.

Whether the denial of his motion to suppress is analyzed in terms of statutory implied consent or in terms of the reasonableness of the search in view of the exigent circumstances, the denial was warranted.[7] See *Cupp* v. *Murphy,* supra; *Buckley* v. *Muzio,* supra. No matter how the defendant slices his constitutional cake, the result remains the same. The motion to suppress should have been denied because there was no unreasonable search.

There is no error.

In this opinion the other judges concurred.

---

[7] The claim that the second test was administered in violation of the fourth amendment merits little consideration. The test was given at the request of the defendant. Furthermore, our holding that the first test should not have been suppressed as violative of the fourth amendment, leaves the defendant bereft of his argument that the second test should be suppressed as "fruit of the poisonous tree."