[EDITOR'S NOTE: This case is unpublished as indicated by the issuing court.] MEMORANDUM OF DECISION
On April 21, 1998 at approximately 5:00 p. m. a motor vehicle accident occurred on the right hand shoulder of Route 8 North between the intersection with Route 84 and Exit 36.
The State of Connecticut filed an information charging the driver of one of the cars, Paul Carter (herein the "defendant") CT Page 11626 with both misconduct with a motor vehicle in violation of Connecticut General Statutes § 53a-57 (a) and the lesser included offense of negligent homicide with a motor vehicle in violation of Connecticut General Statute § 53a-14-222 (a). The state also charged the defendant with operating while under suspension in violation of Connecticut General Statutes §14-215 (a)
The defendant pled not guilty to the charges and elected a trial to the Court.
At the trial, the state produced testimony and exhibits to prove each element of the charges contained in the information. The defense produced none, stating that the facts were not in dispute and the case involved questions of law. The following evidence was introduced by the state and was not refuted by the defense through cross examination or otherwise.
 I. Misconduct With a Motor Vehicle
Richard Felten testified that he was traveling North on Route 8 at approximately 5:00 p. m. on the evening of April 21, 1998. He testified that while traveling North in the first lane, a white Jetta traveling North in the second lane operated by the defendant, encroached into his lane approximately two feet. He further testified that when he first noticed the defendant the defendant was in a "bent-over position . . . bent further down to the right . . . it seemed like he was working on the radio or like he was installing the radio or something under the dash." While he was in that position, the defendant was unable to see the road or where his car was going. Mr. Felten further testified that the defendant traveled on for "a few seconds" in that position until the operator of the Jetta sat up, steered his car back into the proper lane and made eye contact with Mr. Felten, who described the defendant's appearance as "apathetic . . . like he didn't care what he did." Mr. Felten testified that the defendant's "eyes were open . . . he wasn't aggressive or apologetic."
Mr. Felten then testified that the defendant continued to drive and that approximately thirty seconds later, he observed the defendant driving in front of him in the right hand lane and this time, the defendant's tires were approximately two feet over CT Page 11627 the solid white line which separated the first lane from the right-hand shoulder of the road, encroaching upon the shoulder of the highway. Mr. Felten testified that, as the defendant drove his car partially in the right-hand shoulder of the highway, Mr. Felten could not see the defendant's head through the rear window, as he would have expected. Mr. Felten testified that it appeared as though the defendant was once again working on the dash or underneath the dash. Mr. Felten testified that "a second or two later," he looked up in front of him and saw a man standing just in the right-hand shoulder, pouring gas into his truck. He "observed an impact," heard a scream and the male filling the truck with gas "disappeared." Mr. Felten stopped his car beyond the crash scene, waited and then walked back and saw the defendant sitting near the guardrail with a "blank" stare."
The state introduced testimony from two other witnesses who who were present at the accident. They were Neil Johnson and his wife Marybeth Johnson.
Neil Johnson testified that at approximately 5:00 p. m. on April 21, 1998, he was traveling North on Route 8 in Waterbury, just prior to Exit 36, when he ran out of gas. He stated that traffic was "heavy and fast." He left the area, telephoned his wife who agreed to bring him some gas and returned to his car. As he walked back towards his car, he saw a truck with a white cab and blue body pull up in the shoulder behind his car. That truck was operated by Ralph Bird, who had also run out of gas. Mr. Johnson offered to share the gas which his wife was bringing to him with Ralph Bird. The two men waited in the shoulder until Marybeth Johnson arrived at the scene with a container of gas. After pouring gas into his vehicle, Mr. Johnson handed the can to Ralph Bird, "watching him very closely." He noted that at no point was he or Mr. Bird in the travel portion of the highway.
Neil Johnson testified that he observed a white Jetta come off the travel portion of the highway, hit the rear of Mr. Bird's truck and then hit Ralph Bird. He testified that he saw Ralph Bird go airborne and then land ten feet in front of Mr. Bird's truck.
Marybeth Johnson testified that after 5:00 p. m. on April 21, 1998, she traveled to Route 8 North just before Exit 36 to bring gas to her husband who had run out of gas. She testified that she observed an older pickup truck, and then her husband's Toyota Celica, approximately two car lengths in front of the truck, in CT Page 11628 the breakdown lane of the highway. She described the vehicles as being parked on a flat, straight piece of the highway that she could see "quite clearly" from approximately one hundred feet or more as she approached.
She further testified that she watched as Ralph Bird stood in the breakdown lane pouring gas into his tank, she looked down, heard a bang, looked up and saw a white car coming towards her. She ran out of the way, and observed what she later identified as a white Jetta, driven by the defendant, first hit her husband's Toyota Celica and then hit the Dodge truck which she had driven to the scene and come to a rest in the northbound lane, heading in a southerly direction. She testified that she looked back and saw Ralph Bird lying on the ground. He did not have a pulse, was experiencing labored breathing and failed to respond to his name. She described his eyes as "going in different directions," and his right leg was "quite disfigured" and off to the right.
She testified that after the collision she saw the driver of the Jetta and yelled for him to get out of the vehicle, that he was non-responsive and had a "blank" look upon his face. She testified that he did not appear injured when he exited the driver's side door, "scrambled between the vehicles" and sat on a guardrail. In response to a question, she testified that he said his name was Paul and said nothing more. She identified the operator of the Jetta as the defendant, Paul Carter.
The first police officer on the scene was Trooper Campos. Upon arrival, Trooper Campos called for backup, including an accident reconstructionist, and supervised the investigation. When backup arrived, Officer Campos went to the hospital where Mr. Bird had been transported and learned that Mr. Bird had died as a result of injuries sustained during the accident.
Trooper Campos testified that he spoke to the defendant Paul Carter on three separate occasions. At the scene of the accident, immediately after the accident at the hospital, and later at State Police Barracks. When he was first questioned, the defendant stated that he did not know what had happened. At the hospital, Mr. Carter stated that he thought he was hit. At the State Police Barracks he stated that he "thought and felt that he could have fallen asleep," but that it was "a blank." Mr. Carter stated that he recalled traveling Route 84 East to Route 8 North towards Exit 36, but just prior to the exit, he recalled nothing more. CT Page 11629
Trooper William Cario of the Connecticut State Police testified as an expert witness duly qualified in the reconstruction of the accident. It was his opinion the G.M.C. truck was parked on the right-hand shoulder and that the Volkswagen Jetta strayed into the shoulder more than three feet from the travel portion of the highway. He further opined that the Jetta was traveling at a normal rate of speed and did not apply braked immediately prior to the accident in order to avoid the collision.
Steve Babasick, a certified mechanic for over twenty years, testified as an expert that he inspected the braking, steering, and exhaust systems for both the defendant's and the decedent's vehicles. In his expert opinion, the Jetta had no mechanical problems that would have contributed to this accident.
Under Connecticut law:
 "A person is guilty of misconduct with a motor vehicle when, with criminal negligence in the operation of a motor vehicle, he causes the death of another person." C.G.S. § 53a-57 (a).
 Our Supreme Court has ruled that "A person acts with `criminal negligence with respect to a result or circumstance . . . when he fails to perceive a substantial and unjustifiable risk that such result will occur or that such circumstance exists. The risk must be of such a nature that the failure to perceive it constitutes a gross deviation from the standard of care that a reasonable person would observe in the situation." State v. Kristy, 11 Conn. App. 473 (1987)
On the basis of the testimony presented at trial, the Court finds that the defendant was driving while in an impaired condition. As a result of his impaired condition he was unable to maintain visual contact with the road. The court further finds that driving on a multi-lane highway at 55 to 60 miles per hour during rush hour in heavy traffic without seeing where he was going created a substantial and unjustifiable risk of death or serious bodily injury to other persons traveling on the road.
The defendant had an opportunity to perceive that he was unable to see where he was driving, as evidenced by the fact that he was slumped down below the dashboard, unable to see where he CT Page 11630 was driving, encroached upon the lane in which Mr. Felten was driving, resumed an upright position, steered his car back into his own lane and then looked over at and made eye contact with Mr. Felten.
The defendant either did not perceive or, even worse, ignored the fact that driving in his condition posed a substantial and unjustifiable risk of death or serious bodily injury to other persons traveling on the road, as evidenced by the fact that he did not pull over and stop. Continuing to drive in such an impaired condition, was a gross deviation from the standard of care which a reasonable person would observe in such a situation. Consequently, by continuing to drive, the defendant acted with criminal negligence.
The court also finds that after failing to perceive the risk the defendant relapsed. His head fell down below the dashboard once again, rendering him unable to see where he was driving. Consequently, he failed to see the people and vehicles located in the right-hand shoulder of the road which could be seen clearly from approximately one hundred feet away. As a result of his criminal negligence, the defendant's car veered to the right a second time, this time encroaching off the travel surface of the road onto the right-hand shoulder of the road aimed directly toward the clearly visible people and vehicles located in the shoulder. Although he was not speeding, the defendant did not apply his brakes or swerve to avoid hitting them because he did not have visual contact with the road and therefore did not realize that he was on a collision course. As a result of his criminally negligent operation of a motor vehicle, the defendant, Paul Carter, struck and killed Ralph Bird.
The defendant did not present any evidence of physical or mental impairment. At the trial The defendant did not refute the testimony that he recovered from his lapse of consciousness after nearly colliding with Mr. Felten and thus had the opportunity to perceive the substantial and unjustifiable risk of death or serious bodily injury which driving in his condition posed to himself and others. There was no evidence presented that the accident was caused by a mechanical defect in his vehicle. The evidence clearly and irrefutably established that the defendant did violate § 53a-57a of the Connecticut General Statutes shortly after 5:00 p. m. on April 21, 1998. Accordingly, the court finds the defendant guilty of count 1 of the information. CT Page 11631
 II. Driving While Under Suspension
Both Trooper Campos and Bertha Turner, an employee of the Connecticut Department of Motor Vehicles, both testified that on April 21, 1998, Paul Carter's license to operate a motor vehicle was under suspension. The state also introduced into evidence a copy of the suspension mailed by bulk certified mail to Mr. Carter, which notice states that his license was suspended until a specified date and further stated that his license would not be restored until he paid a restoration fee. Ms. Turner also testified that Mr. Carter had not taken the steps specified in the suspension notice which were required in order for the defendant to have his license restored.
Although the defendant concedes that the State produced evidence to prove that the defendant's operators licence was under suspension on April 21, 1998, he argues that as a matter of law there was a "literal end" to the suspension seven months before the accident. Additionally, he argues for mitigation to the penalty pursuant to Connecticut General Statutes § 14-215
(c).
In order to convict the defendant under § 14-2 15(a), the state must prove: 1) that the defendant operated a motor vehicle; 2) that the motor vehicle was operated upon a public highway; and 3) that the operation occurred while the defendant's license was under suspension by the commissioner of motor vehicles. State v. Torma, 574 A.2d 828 (1990)
It is undisputed that the defendant operated a motor vehicle upon a public highway. The suspension notice sent, via bulk certified mail, informed Mr. Carter that his license would be suspended for thirty days effective August 23, 1997 and that he was required to pay a $100.00 restoration fee to reinstate his privilege to operate after the thirty day period. On April 21. 1998, the defendant had not paid the $100.00 necessary to restore his license. Consequently, his license was suspended on the date in question.
Further, the defendant argues for a mitigation of the penalty for operating while under suspension pursuant to C.G.S. §14-215 (c). The defendant is not entitled to mitigation as he is not charged with an offense to which the mitigation statute applies. CT Page 11632 Even if the defendant had been so charged, and convicted, he presented no evidence of mitigating circumstances. Accordingly,the court finds the defendant guilty of count 2 of theinformation.
The Court
By:
Bryant, J.