IN THE COURT OF CRIMINAL APPEALS OF TENNESSEE
AT NASHVILLE
July 2000 Session

## STATE OF TENNESSEE v. MICHAEL A. JANOSKY

**Direct Appeal from the Criminal Court for Davidson County**
**No. 99-T-119, Cheryl Blackburn, Judge**

---

**No. M1999-02574-CCA-R3-CD - Filed September 29, 2000**

---

Michael Janosky appeals from his conviction of driving under the influence. In this direct appeal, he challenges his conviction based upon (1) erroneous admission of breath alcohol test results which he contends were involuntarily obtained and (2) the results of the breath test were not administered in accordance with the requirements of <u>State v. Sensing</u>. As to issue (1), we hold that, absent a motorist's express refusal, consent to a breath test is deemed voluntary as a matter of law. With reference to issue (2), the improper administration of the breath test, we find this issue waived because it was not included in the appellant's motion for new trial. Tenn. R. App. P. 3(e). Accordingly, we affirm the judgment entered by the trial court.

**Tenn. R. App. P. 3; Judgment of the Criminal Court is affirmed.**

DAVID G. HAYES, J., delivered the opinion of the court, in which NORMA MCGEE OGLE, J., joined and THOMAS T. WOODALL, J. filed a separate concurring.

V. Michael Fox, Nashville, Tennessee, for the appellant, Michael A. Janosky.

Paul G. Summers, Attorney General and Reporter, Michael Moore, Solicitor General, Marvin E. Clements, Jr., Assistant Attorney General, Victor S. (Torry) Johnson, III, District Attorney General, and Sean K. Allen, Assistant District Attorney General, for the appellee, State of Tennessee.

### OPINION

The appellant, Michael A. Janosky, was found guilty by a Davidson County jury of driving under the influence, first offense.[1] The trial court imposed a sentence of eleven months twenty nine

---

[1]The appellant was charged under alternative counts of driving under the influence and driving under the influence while having a blood alcohol concentration of .10% or more. The jury found the appellant guilty of both

(continued...)

days, with all of the sentence suspended except for ten days. In this appeal as of right, the appellant asserts that the results of his breath tests should have been suppressed.

After review, we find no error requiring reversal. The judgment of the trial court is affirmed.

**Background**

At approximately 11:00 pm, on June 6, 1998, Metro Police Officer Clinton Gilliland, after entering a gas station, received a complaint of an intoxicated driver. He related that his attention was directed toward the appellant and a vehicle driven by the appellant. Officer Gilliland began to follow the vehicle and observed the vehicle making wide turns. At a stop light, he pulled alongside the appellant's vehicle and asked him, "Had [sic] you been drinking?" The appellant looked at the officer, rolled his head, and took off. Officer Gilliland observed that the appellant's motor skills "appeared somewhat concentrated, not very alert, so to speak. He appeared to be intoxicated . . . ." At this point, Officer Gilliland activated his blue lights and "pulled [the appellant] over."

Upon approaching the appellant, Officer Gilliland "could smell a very extreme odor of an alcoholic beverage about. . . ." He asked the appellant to exit the vehicle. As the appellant was getting out of his car, Officer Gilliland noticed that the appellant "used his right foot to overstep his left as if he had to support himself from falling." The appellant's "eyes were very watery and blood shot" and his speech was "unusually slurred." Based upon his physical observations of the appellant, Officer Gilliland asked the appellant to submit to field sobriety tests. Officer Gilliland then administered the "walk and turn" test which the appellant failed to successfully complete. During the test, the appellant admitted that he could not complete the test because his balance was poor, he added that "I've been drinking, or I drank two liters of beer at Market Street Brewery." Officer Gilliland then administered the "one-legged stand" test. The appellant could not complete this task either. The officer concluded that, "[The appellant] wasn't just intoxicated or under the influence. He was knee-walking, sloppy drunk. This wasn't a borderline case. He was, he was completely intoxicated."

At this point, the appellant was arrested for driving under the influence, handcuffed, and placed in the back of the cruiser. Officer Gilliland read the appellant the Implied Consent Law. The appellant agreed to submit to the breath test. Officer Gilliland then called dispatch requesting an alcohol testing operator at the scene. Officer Jeb Johnston, the alcohol testing operator on duty, responded. Officer Johnston is assigned to the DUI Enforcement unit. He testified that he was certified to administer the test by the Tennessee Bureau of Investigation. The machine used on this occasion was an Intoxilyzer 1400. This particular unit had been calibrated by the TBI on May 8, 1998, and had been checked by Metro officers on June 6, prior to Officer Johnston's shift.

---

(...continued)

offenses and the trial court properly merged the convictions.

Although the appellant had previously agreed to take the breathalyzer test, before Officer Johnson began the actual test, the appellant was asked again if he would submit to the test. The appellant refused the test. Officer Johnston explained that he asked the appellant if he understood the implied consent law and the appellant did not indicate that he did not. Johnston then advised the appellant that "if he wants to go straight to jail, refuse the breath test, and be charged with Implied Consent and DUI."[2] The appellant "blurted out that he had had two shots. . . ." The appellant then consented to the test. The appellant was placed in the rear seat of Johnston's patrol car and Officer Johnston, seated in the front seat, observed the appellant for the required twenty minute period. During the observation period, Officer Johnston testified that the appellant did not "regurgitate at any time," did not "put any foreign objects in his mouth," and did not "consume anything." Although he admitted that he did not physically examine the appellant's mouth, one "can usually tell when somebody has some candy or gum in their mouth. They are usually chewing or sucking on it." Additionally, Officer Johnston related that the appellant was "very talkative, so [he] would have saw if he had something . . .in his mouth." Officer Johnston then administered the test, the results of which revealed that the appellant had a blood alcohol level of .187 percent.

The twenty-three year old appellant testified at trial that he was not advised of the Implied Consent warning by either Officer Johnston or Officer Gilliland. He stated that he was asked if he "wanted to do a Breathalyzer test" by Officer Johnston. The appellant refused. Johnston then informed him that he could "either take it or . . . go to jail." The appellant interpreted this as "[his] only way out of the [patrol] car at that moment was to take the breath test, and since [he] was already late for work, and had to be there, that I probably should take the test." He further advised the court, "It was losing my job or going to jail, you know, in the context of going to jail."[3]

Based upon this evidence, the appellant was convicted of driving under the influence.

**Analysis**

Prior to trial, the appellant filed a motion in limine to have the results of his breath test be suppressed for failure to comply with the technical requirements of State v. Sensing, 843 S.W.2d 412 (Tenn. 1992).[4] A hearing on the motion was held on September 13, 1998. Officer Johnston and

[2]Officer Johnston explained that the appellant was already under arrest for DUI and was not going to be released from the scene regardless of his consent to the breath test.

[3]The appellant, in response to questioning by the court, provided that he had a bachelor's degree in electronic engineering and that he was employed at Service Merchandise in computer operations.

[4]In Sensing, 843 S.W.2d at 416, our supreme court ruled that the admissibility of a breath test depended upon the testing officer's ability to testify as follows:

(1) that the tests were performed in accordance with the standards and operating procedure promulgated by the forensic services division of the Tennessee Bureau of Investigation;

(continued...)

the appellant provided relevant testimony. At the conclusion of the proof, defense counsel assented to the trial court's conclusion that the issue before the court was the "voluntariness . . . on the Implied Consent."

> Based upon the proof at the hearing, the trial court made the following findings of fact: . . .I've heard the testimony from Mr. Janosky and he said that his choice was between going to jail and taking the test because he didn't want to lose his job; however, the facts are pretty clear. Mr. Janosky was already in custody. He is [a] man who is 23 years old, has a BA degree, on his way to work, I might add, and he did choose to take the test. There is nothing in this that would lead me to think this wasn't voluntary. He might not have liked the choices he had, but that doesn't mean that the police officers did anything to overcome his will, which is the crucial issue, so motion denied in involuntariness.

The appellant contests the ruling of the trial court arguing (1) that the State failed to satisfy the requirements of State v. Sensing in that the officer failed to "physically insure that Defendant Janosky's mouth was clear of all foreign material, which may have an effect on the breath test results" and (2) that the breath test was procured involuntarily. Initially, we note that the appellant has waived any challenge to the Sensing requirements. Although such challenge was made in the appellant's motion in limine, the appellant failed to present the issue to the trial court at the hearing on the motion, see Tenn. R. App. P. 36(a), and failed to preserve this issue for appellate review by neglecting to raise this issue in his motion for new trial. Tenn. R. App. P. 3(e). Accordingly, our review is limited to the voluntariness of the appellant's consent to the breath test.

## Voluntariness of Motorist's Consent

---

[4](...continued)
(2) that he was properly certified in accordance with those standards;

(3) that the evidentiary breath testing instrument used was certified by the forensic services division, was tested regularly for accuracy and was working properly when the breath test was performed;

(4) that the motorist was observed for the requisite 20 minutes prior to the test, and during this period, he did not have foreign matter in his mouth, did not consume any alcoholic beverage, smoke, or regurgitate;

(5) that he followed the prescribed operational procedure; and

(6) that the printout record offered in evidence was the result of the test given to the person tested.

The trial court has the duty to determine whether by a preponderance of the evidence the State has established the six prerequisites for admissibility. State v. Edison, 9 S.W.3d 75, 76 (Tenn.1999).

Where the appellant claims that he has been aggrieved by a potentially unlawful search or seizure, the proper remedy is to file a motion to suppress. See DAVID L. RAYBIN, *Tennessee Criminal Practice and Procedure* § 18.6 (1984). Because the trial court considered the issue on the merits, we have chosen to treat the pretrial hearing as if the appellant had utilized the proper procedure. See State v. Johnson, 673 S.W.2d 877, 883 (Tenn. Crim. App. 1984).

In reviewing a denial of a motion to suppress, this court looks to the facts adduced at the suppression hearing which are most favorable to the State as the prevailing party. State v. Daniel, 12 S.W.3d 420, 423 (Tenn. 2000) (quoting State v. Odom, 928 S.W.2d 18, 23 (Tenn. 1996)). In considering the evidence presented at the hearing, this court extends great deference to the fact-finding of the suppression hearing judge with respect to weighing credibility, determining facts, and resolving conflicts in the evidence. Daniel, 12 S.W.3d at 423. Indeed, these findings will be upheld unless the evidence preponderates otherwise. Id. Furthermore, this court may consider the entire record, including the evidence submitted both at the suppression hearing and at trial, in evaluating the correctness of the trial court's ruling. State v. Henning, 975 S.W.2d 290, 297 (Tenn.1998). Although deference is given to the trial court's findings of fact, this court conducts its own appraisal of the constitutional questions presented by reviewing the law and applying it to the specific facts of the particular case. Id. (citing State v. Yeargan, 958 S.W.2d 626, 629 (Tenn. 1997); Beare v. Tennessee Dept. of Revenue, 858 S.W.2d 906, 907 (Tenn. 1993)).

The administration of a breath test for the detection of a person's blood alcohol level is a seizure of the person and a search for evidence within the purview of the Fourth Amendment of the United States Constitution. See Schmerber v. California, 384 U.S. 757, 86 S.Ct. 1826 (1966). The analysis of any warrantless search must begin with the proposition that such searches are *per se* unreasonable under the Fourth Amendment to the United States Constitution and Article I, Section 7 of the Tennessee Constitution, subject only to a few well-delineated exceptions. See Coolidge v. New Hampshire, 403 U.S. 443, 454-55, 91 S.Ct. 2022, 2031-32 (1971); Katz v. United States, 389 U.S. 347, 357, 88 S.Ct. 507, 514 (1967); State v. Tyler, 598 S.W.2d 798, 801 (Tenn.Crim.App.1980). One such exception to the warrant requirement includes exigent circumstances. See generally Schmerber v. California, 384 U.S. at 757, 86 S.Ct. at 1826. Exigent circumstances arise when authorities have reason to believe that evidence is in danger of being destroyed or removed. See State v. Jennette, 706 S.W.2d 614, 617 (Tenn. 1986) (reasonable likelihood that evidence may be destroyed if officers have to interrupt investigation to obtain warrant). Thus, a warrantless test of an individual's bodily substances does not violate any constitutional right so long as the search was supported by probable cause, the evidence was of an evanescent nature, and the means and procedures employed in taking the substance were reasonable. See Schmerber v California, 384 U.S. at 770-772, 86 S.Ct. at 1835-1837 (warrantless seizure of blood not prohibited because evidence may be lost if not immediately seized); see also People v. Ayres, 591 N.E.2d 931 (Ill. App. 1992). Based upon the fact that evidence of blood alcohol content begins to diminish shortly after drinking stops, a compulsory breath or blood test, taken with or without the consent of the donor, falls within the exigent circumstances exception to the warrant requirement. Schmerber v. California, 384 U.S. at 770, 86 S.Ct. at 1836; see generally State v. Krantz, 848 P.2d 296, 299 (Ariz. App. 1993); State v. Taylor, 531 A.2d 157, 160 (Conn. App. 1987);

State v. Nickerson, 973 P.2d 758, 762 (Idaho 1999); Village of Algonquin v. Ford, 495 N.E.2d 595, 596 (Ill. App. 1986).

In addition to the exigent circumstances established by the nature of the evidence in cases involving intoxicated motorists, the statutorily created implied consent of the motorist permits the warrantless search of the motorist's breath or blood. See generally Schneckloth v. Bustamonte, 412 U.S. 218, 219, 93 S.Ct. 2041, 2043 (1973) (voluntary consent exception to warrant requirement). Under the express provisions of Tenn. Code Ann. § 55-10-406 (1998), any person who operates a motor vehicle on Tennessee's highways is statutorily deemed to have consented to an evidentiary test for blood alcohol concentration.[5] Thereby, anyone who exercises the privilege of operating a motor vehicle in this state has consented in advance to submit to a breath alcohol test. Indeed, by virtue of the provisions of Tenn. Code Ann. §55-10-406 (a)(1), our legislature has declared that consent of all motorists is implied; therefore, it is unnecessary for law enforcement officers to obtain the voluntary consent of an individual motorist before administering a breath test for alcohol

---

[5]Tenn. Code Ann. § 55-10-406 provides, in pertinent part:

(a)(1) Any person who drives any motor vehicle in the state is deemed to have given consent to a test for the purpose of determining the alcoholic or drug content of that person's blood; provided, that such test is administered at the direction of a law enforcement officer having reasonable grounds to believe such person was driving while under the influence of an intoxicant or drug, as defined in § 55-10-405. . .

(2) Any law enforcement officer who requests that the driver of a motor vehicle submit to a test pursuant to this section for the purpose of determining the alcoholic or drug content of the driver's blood shall, prior to conducting such test, advise the driver that refusal to submit to such test will result in the suspension of the driver's operator's license by the court. The court having jurisdiction of the offense for which such driver was placed under arrest shall not have the authority to suspend the license of a driver who refused to submit to the test if such driver was not advised of the consequences of such a refusal.

(3) If such person having been placed under arrest and thereafter having been requested by a law enforcement officer to submit to such test and advised of the consequences for refusing to do so, refuses to submit, the test shall not be given and such person shall be charged with violating this subsection. The determination as to whether a driver violated the provisions of this subsection shall be made at the same time and by the same court as the one disposing of the offense for which such driver was placed under arrest. . . .

(4) Any person who violates the provisions of this section by refusing to submit to the test pursuant to subdivision (3) shall be charged by a separate warrant or citation that does not include any charge of violating § 55-10-401 that may arise from the same occurrence.

(b) Any person who is unconscious as a result of an accident or is unconscious at the time of arrest or apprehension or otherwise in a condition rendering that person incapable of refusal, shall be subjected to the test as provided for by §§ 55-10-405--55-10-412, but the results thereof shall not be used in evidence against that person in any court or before any regulatory body without the consent of the person so tested. Refusal of release of the evidence so obtained will result in the suspension of that person's driver license, thus such refusal of consent shall give such person the same rights of hearing and determinations as provided for conscious and capable persons in this section.

. . .

concentration level. The purpose behind the implied consent law is to facilitate the gathering of evidence against intoxicated drivers. Thus, the State may compel submission to the testing if the officer has reasonable grounds to believe that the motorist is intoxicated. State v. Bullington, 702 S.W.2d 580, 583 (Tenn. Crim. App. 1985) (citing South Dakota v. Neville, 459 U.S. 553, 103 S.Ct. 916 (1983); Schmerber v. California, 384 U.S. at 757, 86 S.Ct. at 1826).

A motorist's right to refuse to submit to a breath test under Tennessee's implied consent law is not a constitutional right. Rather, the State of Tennessee, through its enactment of Tenn. Code Ann. §55-10-406(a)(2) and (a)(3), has adopted a policy position prohibiting law enforcement officers from administering a breath or blood alcohol test against the motorist's will. Instead, in an effort to avoid potentially violent confrontations between private citizens and law enforcement officers, the state has elected to permit the motorist to refuse the test. See South Dakota v. Neville, 459 U.S. at 559-560, 103 S.Ct. at 920. See, e.g., Krantz, 848 P.2d at 299; Bush v. Bright, 264 Cal. App. 2d 788, 789 (1968); Taylor, 531 A.2d at 160. The right to refuse is not absolute; rather, the right to refuse will result in suspension of the motorist's driver's operator's license, assuming appropriate procedural protections are provided. See Tenn. Code Ann. § 55-10-406(b). See also South Dakota v. Neville, 459 U.S. at 560, 103 S.Ct. at 920; Mackey v. Montrym, 443 U.S. 1, 17-19, 99 S.Ct. 2612, 2620-21 (1979). By striking this balance, the statute motivates drivers to take the test, but does so without resorting to physical compulsion. See State v. Hitchens, 294 N.W.2d 686, 688 (Iowa 1980).

In the present case, the appellant, by choosing to engage in a regulated activity, that of driving a motor vehicle, subjected himself to the provisions of Tenn. Code Ann. § 55-10-406. The appellant was lawfully arrested for driving under the influence. His driving behavior, his demeanor, and his failure to complete the field sobriety tests formed the factual bases for the officer's inference that the breath test was likely to reveal evidence of the offense. The appellant presented no evidence of his express refusal to submit to the breath test. He simply asserts that his submission to the test was involuntary. The argument that consent to a breath alcohol test was involuntary or coerced is misplaced. Consent is unnecessary as consent has already been obtained by the act of driving the motor vehicle. Our law is clear that the only time "the test shall not be given" is when the motorist "refuses to submit" to the test. To hold otherwise would permit a motorist to submit to the test and, after obtaining an adverse test result, challenge the introduction of the BAC test results in the prosecution of the DUI charge as well as precluding citation of the defendant for non-compliance with the implied consent law. The Implied Consent Law permits introduction of either the BAC results or the suspension of the motorist's driver's license. See generally Tenn. Code Ann. § 55-10-406. The appellant in the present case seeks to avoid both consequences. Under our implied consent law, he cannot do so.

Additionally, neither the results of breath alcohol tests nor a motorist's refusal to submit to the test are protected by the Fifth Amendment. See State v. Frasier, 914 S.W.2d 467, 471-72 (Tenn. 1996). The results of breath alcohol tests constitute physical evidence and are not afforded the procedural protections encompassed by the Miranda warnings. See Schmerber v. California, 384 U.S. at 757, 86 S.Ct. at 1826; see also Frasier, 914 S.W.2d at 471; State v. Huskins, 989 S.W.2d 735, 737 (Tenn. Crim. App. 1998), perm. to appeal denied, (Tenn. 1999). Indeed, the giving of a breath

or blood sample is nontestimonial in nature and the Fifth Amendment right against self-incrimination is not implicated  Schmerber, at 757, 86 S.Ct. at 1826;  see also   State v. Lord, 513 S.E.2d 25, 26 (Ga. App. 1999); Ford, 495 N.E.2d at 596; Ewerokeh v. State, 835 S.W.2d 796, 797 (Tex. Ct. App. 1992).  Thus, the appellant's argument that he had a constitutional right not to incriminate himself by submitting to the breath test is without merit.

### Conclusion

After review of the issue presently before this court, we conclude that the express consent of the motorist is not a prerequisite for the admission of a breath alcohol test into evidence in a DUI prosecution.  Explicitly, we hold that the voluntariness of the motorist's consent at the time of the testing is of no consequence because the motorist has impliedly consented as a matter of law when he or she elects to operate a motor vehicle upon the highways of this state. Cf. King v. State, 598 S.W.2d 834, 835 (Tenn. Crim. App. 1980) (statute gives rise to implied consent). But see State v. Blackwood, 713 S.W.2d 677, 680 (Tenn. Crim. App. 1986) (valid consent necessary for blood test). Rather, it is the motorist's express refusal, provided by  legislature largesse, and not the voluntariness of the individual motorist's submission to the test, as required by the Fourth Amendment, which governs the inadmissibility of the test results.  Under the facts of the present case, we conclude that the appellant did not refuse the breath test and, therefore, the breath test was lawfully obtained.

For the foregoing reasons, the judgment of conviction is affirmed.

_____
DAVID G. HAYES, JUDGE

-8-